JOHN W. AIKEN

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed December 18, 1899.*

1. EVIDENCE—*what not proper cross-examination of witness as to good reputation.* A witness who has testified in a criminal case that the general reputation of the accused as to being a peaceable and law-abiding man is good, cannot be asked, on cross-examination, whether he has heard rumors of the accused having been connected with former criminal acts. (CARTWRIGHT, C. J., dissenting.)

2. SAME—*accused has the right to have evidence confined to charge in indictment.* One on trial for a serious offense has the right to have the evidence confined to the charge in the indictment, and the admission of evidence having a tendency to excite the passion or prejudice of the jury, and which has no legitimate bearing upon the crime charged, cannot be said to be harmless error.

WRIT OF ERROR to the Circuit Court of McDonough county; the Hon. JOHN J. GLENN, Judge, presiding.

NEECE & SON, and SHERMAN & TUNNICLIFFS, for plaintiff in error.

TOM BENTON CAMP, State's Attorney, and WILLIAM H. HOLLY, for the People.

Mr. JUSTICE CRAIG delivered the opinion of the court:

John W. Aiken, the plaintiff in error, was indicted at the May term, 1899, of the circuit court of McDonough county, for the crime of murder in producing an abortion upon one Hattie Reece, from the effects of which she died. The indictment contained several counts, in two of which it was alleged the miscarriage was produced by the use of certain instruments the name and description of which were to the grand jurors unknown; two alleged the administering of certain noxious and "abortifacient" drugs to the grand jurors unknown; while the last, or fifth, count alleged the miscarriage was produced by some means to the grand jurors unknown. A motion to quash the indictment was overruled, a plea of not guilty was entered, and on the trial the jury returned a verdict finding the defendant guilty of murder and fixing his punishment at fifteen years in the penitentiary. Motions for a new trial and in arrest of judgment were overruled and judgment was entered on the verdict. Plaintiff in error brings the case to this court and assigns several errors.

The plaintiff in error had been a practicing physician for thirty-four years in Tennessee, McDonough county, Illinois, while Mrs. Hattie Reece taught in the primary department in a school in Browning, in Schuyler county, in which her husband was principal. It appears from the evidence that she thought she was pregnant and consulted a physician in Browning, and wrote to a physician in Macomb who had previously treated her for some form of female complaint, and inquired whether he thought she could bear children with safety. She also wrote Dr. Aiken, the plaintiff in error, and two or three letters passed between them. The letters themselves were not in evidence, but secondary evidence of what purported to be their contents was given by the husband of deceased,

for the People, and by the plaintiff in error as a witness in his own behalf. Mrs. Reece came to Tennessee on Friday evening, the 4th day of March, 1899, and was accompanied from the depot to the hotel by Dr. Aiken, who had engaged a room for her. The doctor called on her on Saturday, and she was in bed all day. Sunday she sat up some and wrote a letter. She went to bed and did not get up again until Thursday, when her husband came. He stayed until Friday night and left on the nine o'clock train. Mrs. Reece was attended by Dr. Aiken, who came there every day until she died, March 16.

The People's evidence introduced to establish the charge was circumstantial in character. The defendant denied that he did anything to produce an abortion, but treated her for piles. Two physicians made a *post mortem* of the deceased at the instance of the coroner of McDonough county, at the village of Tennessee, and testified that in their opinion the death of deceased was caused by a miscarriage. They gave conditions they found as a basis of their opinion, among which were shreds of the afterbirth found. They testified that the fœtus was two and one-half or three months advanced, and that the abortion would follow the infliction of its causes in from one to six weeks, or, it might be, in twenty-four hours. Both physicians were unable to say whether the miscarriage resulted from an external cause or some internal natural cause; that it was impossible to tell what caused it, or whether she had committed it on herself.

It is claimed in the argument that the verdict is not sustained by the evidence; but as the judgment will have to be reversed for an erroneous ruling on the admission of evidence we prefer not to discuss the evidence, for the reason that what we might say might prejudice the rights of the parties in another trial.

The record shows that the defendant introduced a large number of witnesses, who testified that his general reputation in the neighborhood where he resided, for

being a peaceable and law abiding man, was good. On cross-examination several of the witnesses were asked questions by the People's attorney as to whether they had not heard defendant had violated the criminal law, or been implicated in burning some property, etc. William Cook, who had known defendant for forty years and testified his reputation as a peaceable and law abiding man was good, was asked by the People, on cross-examination, against defendant's objection:

Q. "Did you ever hear any talk about trouble between him and a woman, or any woman, of a criminal character? (Question objected to by defendant's counsel, objection overruled, and exception.)

A. "Why, I have heard a great many things what Dr. Aiken should have been implicated in, in regard to women. Whether a word of it is true I don't know.

Q. "Did you ever hear anything to the effect—any rumor—that he had assisted any woman or women in getting rid of a child? (Objection; overruled, and exception.)

A. "No, sir."

Frank Eakle, who testified his (defendant's) reputation was good, on cross-examination, against the objection of defendant, was asked by the People:

Q. "Did you hear it rumored or said that the doctor had been mixed up or implicated in any way in the burning of any property down there in that neighborhood?

A. "A good many years ago there was some talk of that kind.

Q. "I will ask you if you have at any time heard it stated or talked or rumored,—not saying it is true, understand,—that he had committed an abortion or miscarriage on any woman?

A. "No, sir."

Charles Cook was asked by the People, on cross-examination, against the objection of the defendant:

Q. "Have you ever heard these people talking,—say that he had committed some crime, for violation of a law?

A. "Yes, one time,—it has been a good many years ago,—about the time Hill's Grove was laid out."

Mike Doran was asked, on cross-examination, against the objection of defendant:

Q. "Have you heard some rumor during that time— have you ever heard him charged with committing some crime?

A. "Yes, a number of years ago.

Q. "He was charged at that time with burning some farmer's property?

A. "Yes, sir.

Q. "Some man he had trouble with?

A. "I think that is the case."

Robert Miller testified that his general reputation for being a peaceable and law abiding man was good, and was asked, on cross-examination, against defendant's objection:

Q. "Have you heard rumors that he had been doing work of the same kind charged in this case?

A. "No, sir.

Q. "Have you heard him charged with other crimes in that neighborhood?

A. "Yes, sir."

Amos Lawyer was permitted to be asked, against the objection of defendant:

Q. "Have you ever heard, at any time, anybody express any opinion as to Dr. Aiken being connected with some offense against the laws of this State?

A. "I have; have heard it probably a dozen times.

Q. "And have you heard very many positive declarations as to whether he was not guilty of another offense? (Question objected to by defendant's counsel, overruled, and exception.)

A. "Of course, in the community some think he was and some think he was not. I have heard this in relation to more than one offense against the law in which the doctor was interested or implicated."

The general character of a person is the estimate in which he is held in the neighborhood where he has resided. In some cases of circumstantial evidence, where the evidence for the People and the defendant is nearly balanced, good character may be very important to the defendant's defense. This court has held that particular acts of misconduct are never admissible in rebuttal of the defendant's good character. In *McCarty* v. *People*, 51 Ill. 231, the question arose whether, after the defendant had given evidence of his good character by general reputation, the trial court erred in permitting the prosecution to give in evidence particular acts of misconduct or crime in rebuttal,—and that by rumors and reports in the country. The court held the admission of the evidence erroneous and reversed the judgment for that error alone. In the decision of the case it was said: "Were this the law, no person arraigned for crime, in which his uniform good character prior to the alleged offense, which this court has said is an element proper for the jury to consider in the trial of all offenses, had been established by testimony, would incur the risk attendant upon the production of such proof, if it could be rebutted by proof of rumors or reports of particular aberrations. Every man is presumed ready at all times to defend his general character but not his individual acts. Of those he must have due notice. No matter how pure one's life may be, he would hardly venture upon the proof if to be followed by such consequences." This rule was recognized and approved in *Gifford* v. *People*, 87 Ill. 210, where Gifford, the plaintiff in error, was convicted of the crime of rape. On the cross-examination of Prosper Washburn, a witness introduced by the defendant to prove former good character, he was asked, "Have you not heard people say that he (alluding to the defendant) was a gambler or gambled?" This was objected to, but the objection was overruled by the court and the witness answered that he had heard some say he gambled. Again, when the de-

fendant gave evidence in his own behalf, he was compelled, over his counsel's objection, to state that he had visited houses of ill-fame in Cleveland and Chicago, and of the number of times, and of having had connection with their inmates, and also that he had played cards for money. In passing on the question it was said (p. 214): "We have no doubt this evidence seriously prejudiced the defendant with the jury. Evidence of prior misconduct is never admissible in a criminal trial unless it be to prove prior malice towards an individual, or guilty knowledge, neither of which can have pertinency in cases like the present. (1 Wharton on Crim. Law,—7th ed.—sec. 639; Roscoe on Crim. Evidence,—5th Am. ed.—p. 97; 1 Phillips on Evidence,—Cowen, Hill & Edw. notes,—p. 765.) And particular acts of misconduct are never admissible in rebuttal of proof of the defendant's good character. (*McCarty* v. *People*, 51 Ill. 231.) Nor can it be said this evidence was admissible for the purpose of impeaching the defendant's reputation as a witness, only, although not for the purpose of proving the offense charged. The reputation of a witness cannot be impeached by proof of particular acts; it must be by proving his general reputation for truth and veracity to be bad.—*Frye* v. *Bank of Illinois*, 11 Ill. 367; *Eason* v. *Chapman*, 21 id. 33; *Crabtree* v. *Kile*, id. 180; *Hansell* v. *Erickson*, 28 id. 257; *Dimick* v. *Downs*, 82 id. 570."

In Wharton on Criminal Evidence (sec. 61) the author says: "Where a defendant has voluntarily put his character in issue and evidence for the prosecution has been introduced in rebuttal, it has been said that the examination may be extended to particular facts, though this has properly been denied in most jurisdictions; and viewing the question in regard to principle, we must hold it to be oppressive to a defendant, as well as irrelevant to the real issue, to admit in rebuttal, on whatever pretext, a series of independent facts forming each a constituent offense." In support of the text the author cites in a

note eighteen well considered cases, both English and American.

Under the rule established in the cases cited it is apparent that the court erred in the admission of the evidence complained of. There is no ground for holding that the evidence, although inadmissible, did no harm. It must be remembered that the defendant was on trial for a serious crime and it was his right to have the evidence confined to the charge in the indictment, and evidence which had a tendency to excite the passion or prejudice of the jury, as the evidence in question certainly did, and which had no legitimate bearing on the charge upon which the defendant was arraigned, could not do otherwise than lead to an erroneous verdict.

For the error indicated the judgment will be reversed and the cause remanded.        *Reversed and remanded.*

Mr. CHIEF JUSTICE CARTWRIGHT, dissenting:

The testimony of a witness as to whether general reputation is good or bad is his conclusion from all the information he has on that subject, including the existence or the absence of charges against the person and expressions of people. I understand the rule to be, that on cross-examination the sources and the nature of such information may be inquired into for the purpose of showing the grounds of the estimate given by the witness and testing his credibility. It is not proper to prove, in rebuttal, specific acts of misconduct, but the usual tests may be applied to determine whether the witness testifies truly. Such cross-examination is not permitted for the purpose of proving the particular fact but to weaken the force of the direct testimony. Under this rule a witness who testifies to good reputation may be cross-examined concerning specific facts and rumors which are inconsistent with his direct testimony. The rule is sustained by the following authorities: Best on Evidence, sec. 261; 1 Taylor on Evidence, par. 257, notes 39, 47; *Peo-*

ple v. *Pyckett*, 99 Mich. 613; *Jackson* v. *State*, 78 Ala. 473; *Carpenter* v. *Blake*, 10 Hun, 358; *Thompson* v. *State*, 100 Ala. 70; *State* v. *Crow*, 107 Mo. 341; *Leonard* v. *Allen*, 11 Cush. 241; *Commonwealth* v. *O'Brien*, 119 Mass. 342; *State* v. *Jerome*, 33 Conn. 265; *State* v. *Arnold*, 12 Iowa, 479; *Oliver* v. *Pate*, 43 Ind. 132; *People* v. *McKane*, 143 N. Y. 455; 1 Thompson on Trials, par. 524; 8 Ency. of Pl. & Pr. 115. In the case of *McCarty* v. *People*, 51 Ill. 231, the objectionable evidence was admitted in rebuttal, and the rule is, that proof of particular acts is not admissible in rebuttal. The decision in *Gifford* v. *People*, 87 Ill. 210, was based on that ground alone, and this question was not considered.