## No. 11,068.

## BRINDISI *v.* THE PEOPLE.

Decided November 10, 1924.

Plaintiff in error was convicted of murder.

## *Affirmed.*

### *On Application for Supersedeas.*

1. APPEAL AND ERROR—*Evidence Sufficient.* In the absence of prejudicial error, judgment on a verdict which is supported by competent evidence, will not be disturbed on review.

2. EVIDENCE—*Handwriting—Comparison.* Proof of the genuineness of extraneous documents, and their comparison by an expert witness with the writing in dispute, and his testimony thereon, held proper.

3. CRIMINAL LAW—*Admissions—Subsequent Facts.* Objections to questions concerning facts and circumstances occurring after admissions by defendant in a criminal case, held properly sustained, such happenings being immaterial as bearing on the voluntary character of the admissions.

4. *Defendant's Failure to Testify.* Remarks of the trial court concerning defendant's right to testify in a criminal trial, held not prejudicial, in view of explanatory remarks and instructions of the court covering that question.

5. *Right of Defendant to Testify—Instruction.* Instruction concerning the right of a defendant in a criminal case to testify, set out.

6. WITNESSES—*General Reputation—Cross-Examination.* A witness having testified to the good reputation of a defendant in a criminal case, evidence on cross examination that the witness had heard that defendant had been arrested and fined for carrying concealed weapons, held proper.

7. CRIMINAL LAW—*Evidence.* In a homicide case, proffered evidence on behalf of defendant on a theory of suicide and killing by another person, properly rejected, where there was no foundation to support such a theory.

8. *Evidence—Exclusion.* The exclusion of evidence concerning

ownership of a gun used in the killing in a homicide case, without prejudice, where the ownership was admitted by the people.

9.      *Instructions—Requests.*   Requested instructions which are covered by instructions given by the court, or which are erroneous, are properly refused.

*Error to the District Court of the City and County of Denver, Hon. Clarence J. Morley, Judge.*

Messrs. MORRISSEY, MAHONEY & SCOFIELD, Mr. JOSEPH J. WALSH, Mr. HAROLD G. KING, for plaintiff in error.

Mr. WAYNE C. WILLIAMS, Attorney General, Mr. JOSEPH P. O'CONNELL, Assistant, for the people.

*En banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

ON a verdict of guilty of murder in the first degree plaintiff in error, hereinafter referred to as defendant, was sentenced to life imprisonment. To review that judgment he brings error and asks that the writ be made a supersedeas.

Defendant did not take the stand. From the evidence the jury was justified in finding as follows:

Saturday, August 25, 1923, defendant and Emma Vascovie, between whom there was an acquaintance and some sort of association, each had a room at the Del Ray Hotel in Denver. At about 8 p. m. of that day Lillian McGlone came to the hotel and for several hours thereafter the three were in the room of the Vascovie woman, a part of the time drinking and quarreling. Once the landlord interfered and ordered them to keep quiet. At one time the three were for a considerable period out of the hotel and were seen quarreling in an adjacent alley. About 1:30 a. m. defendant went to the room of a friend in the hotel, told him he had blackened the eye of the McGlone woman and brought him to see it. Mrs. McGlone asked this man to take her home and, upon his inquiry of defendant if he might do so, the latter answered, "No, she is not going home until she settles with me." About 3

a. m. a different room was assigned the women, on the request of Emma Vascovie, to enable them, as she stated, to get away from defendant. That room they occupied until morning. They then left the hotel and went to the residence of Mrs. Calone (sister of the husband of Lillian McGlone) where they remained Sunday and Sunday night. During all of Sunday Mrs. McGlone was in bed and defendant called the house at least six times demanding to speak with her, but she refused to talk with him. The last of these calls came about 10 p. m., at which time defendant, who had been informed that Mrs. McGlone was "sick from the black eye", asked permission to come over and help care for her and his request was refused. Monday morning defendant again called over the 'phone and again Mrs. McGlone declined to talk with him. About 9 a. m. Monday, August 27, Mrs. Calone's husband having theretofore been absent from home, returned and took Emma Vascovie and Lillian McGlone in his car to the McGlone apartment. They were thereafter seen sitting on the porch, Mrs. McGlone with a bandage over her head, or across her eye. While they were there defendant, (who that morning had been seen by the landlady of the Del Ray Hotel to put a pistol in his pocket and depart therefrom), came up the street, entered the place, and he and Mrs. McGlone went into the house. A few minutes later Emma Vascovie went in. About five minutes thereafter a workman across the street heard several shots and saw a curtain at one of the windows pulled back and some one look out. About 5:30 in the evening a tenant in the same building, passing the door of the McGlone apartment, noticed it ajar. Glancing in he saw the body of a woman on the floor. He thereupon notified the police who promptly responded and entered the apartment. They found the bodies of Emma Vascovie and Lillian McGlone on the floor of the apartment and a 38 calibre automatic pistol, with which they had been killed, lay between them. Although their relations were not always harmonious these women had been friends and constant associates. Both were more or less addicted to drink and lived on the borderland of

the criminal law.   The apartment in which they were found was usually occupied by Mrs. McGlone and her husband.   On a table in the room were found paper, ink, a fountain pen and ➤ blood smeared note, written in ink, which read:

"Denver Colo

I kill him because
I though to much
of him I want
him to going
me where I go
          goodbye I am                    -
Happy now            L
          She not to
          come"

The two words underscored are difficult to decipher and are probably incorrectly interpreted.   The words "she not to come" are written with different pen and ink than the body of the note.

Defendant was arrested in Detroit, Michigan, and returned to Denver.   He was tried in the instant case for the murder of Lillian McGlone.   While in custody he stated that he had a quarrel with the McGlone woman on August 25th, as above recited, and gave her a black eye, that he went to her apartment on the morning of August 27, 1923, remained there about an hour and a half, came out, threw his gun in a creek, stayed several days around a suburb of Denver, went to Mexico, returned to Denver about October 1, and went to Detroit about December 6.   He declined to tell what he did while in the McGlone apartment and when asked if he killed one or both of the women he replied, "I won't say that I did or I won't say that I didn't." It was further shown that the note above referred to was in his handwriting.

Such, in brief, is the case of the people.   It is corroborated, rather than discredited, by other evidence and numerous side lights not herein detailed.   Such discrepancies or inconsistencies as the record discloses are those natural

in the recitation of such a story. The verdict is amply supported by the evidence and in the absence of prejudicial error the judgment must stand.

Of the forty-five assignments twelve only are argued on this application, under the following heads: (1) The admission of certain extraneous writings; (2) the exclusion of cross-examination relating to admissions made by defendant; (3) an alleged prejudicial statement of the court; (4) the admission of a portion of the cross-examination of defendant's witness, Hoglund; (5) the exclusion of certain evidence offered by defendant.

1. A properly qualified expert testified that defendant wrote the note above set out. This conclusion he reached by a comparison thereof with defendant's signature on a hotel register and portions of an application for employment, both clearly established as the handwriting of defendant. These exhibits and photographs thereof, made by the expert for purposes of study and comparison, were admitted in evidence over defendant's objection. There were also admitted, in like manner, certain specimens of the handwriting of Emma Vascovie and Lillian McGlone and photographs thereof, and the witness further testified that said note was not written by either of the women.

Section 6538, C. L. 1921, reads as follows: "Comparison of a disputed writing, with any writing proved to the satisfaction of the court to be genuine, shall be permitted to be made by witnesses in all trials and proceedings, and the evidence of witnesses respecting the same may be submitted to the court and jury as evidence of the genuineness or otherwise of the writing in dispute."

Counsel for defendant point out that when this act was introduced in the Legislature it read: "Comparison of a disputed handwriting, with any writing proved to the satisfaction of the court to be genuine, is permitted to be made by witnesses; *and such writings* and the evidence of witnesses respecting the same may be submitted to the court and jury as evidence of the genuineness, or otherwise, of the writing in dispute."

Since, by amendment, the words "and such writings"

were stricken out it is said the intent of the Legislature was to bar the submission to the jury of documents used for the purposes of comparison, and hence their admission in the instant case constitutes reversible error. In support of that contention counsel cite *Wilber, et al. v. Eicholtz,* 5 Colo. 240; *Bradford v. People,* 22 Colo. 157, 43 Pac. 1013, 22 C. J. 773, and *Tunstall v. Cobb,* 109 N. C. 316, 14 S. E. 28. They further contend that the act must be strictly construed, citing 22 C. J. 779, § 879, but admit that the contrary is held in *Cook v. Moecker,* 217 Ill. App. 479, 485.

That there is much confusion in the authorities in this country is pointed out in the note in 62 L. R. A. 817, discussing *Univ. of Ill. v. Spalding,* 71 N. H. 163, 51 Atl. 731.

The existing confusion, with its historical basis, is fully set forth in Wigmore on Evidence (2nd Ed.) Vol. 4, § 1994. The correct rule and its logical basis will be found in *Macomber v. Scott,* 10 Kan. 335. So far as we are aware this rule has been followed in this jurisdiction from the earliest times and in the most important and closely tried cases seems to have been unquestioned, either in the trial court or here. *Ausmus and Moon v. People,* 47 Colo. 167, 197, 107 Pac. 204. In *Wilber, et al. v. Eicholtz, supra.* the writings compared were already in the case and the question of extraneous documents was not involved. The same is true of *Bradford v. People, supra,* although Mr. Chief Justice Hayt inadvertently states in the opinion in the latter case that the question had been decided in the former.

It occurs to us that the words "the same" appearing in said section 6538, C. L. 1921, refer to "writing proved" as well as to "disputed writing" and that the words "and such writings" may well have been stricken from the original bill as superfluous. If the words "the same" do not so refer then their inclusion made the act merely declaratory of the common law, as set forth in Wigmore on Evidence, supra, and they were omitted for that reason. Whatever the fact, and whatever the weakness of expert

testimony on handwriting, the competence and value of such testimony are well settled. In ordinary cases it can only be made available by the proof of the genuineness of extraneous documents and their comparison by the witness with the writing in dispute. In such a case to forbid the witness to make comparisons and point out therefrom the reasons for his conclusions would greatly weaken the force of his testimony and seriously cripple that cross-examination which is its only safe test. To forbid full examination by jurors is to withhold from them the only means by which they can judge the credibility of the expert and determine the weight of his opinion.

The stock objections to submitting such writings to the jury are: (a) The possible unfairness of the samples of handwriting, (b) the raising of collateral issues, (c) the probable illiteracy of jurors. (a) and (b) are within the discretion and control of the trial court, and (c) is equally applicable to any writings submitted to a jury. Whatever bulwarks of reason may have supported the last mentioned objection when first raised more than a century ago, have been swept away by the rising tide of education and enlightenment since that distant day. Moreover, in the instant case, no possible prejudice to the defendant by the admission of this evidence and its examination by the jurors is suggested by counsel and we can conceive of none.

2. Within an hour after defendant had been returned to Denver from Detroit he was taken to the office of Captain of Detectives Rinker, and there questioned by the captain in the presence of officers Gentry and Lane, and others. The three named testified to his admissions hereinbefore recited. On cross-examination Rinker and Lane were asked if defendant was held incommunicado for several days thereafter. An objection to such interrogatories was sustained and that ruling is assigned as error. No restrictions were imposed by the court on cross-examination as to the circumstances and conditions under which the admissions were, made and what happened thereafter

was of course immaterial as bearing upon the question of their voluntary character.

3.   During the direct examination of Hoglund, landlord of the Del Ray Hotel, called as a witness for defendant, he was asked: "What was Lillian McGlone's general reputation in the city and County of Denver State of Colorado prior to August 27 as to whether or not she was a peaceable, sober law-abiding citizen?"

The question was objected to by the district attorney, first because it had not been shown that the witness knew the reputation of the deceased, and second because it was immaterial in the absence of any evidence or claim of an attack on defendant by deceased at the time of the homicide.   The objection was argued by both sides and the court held it good on the first ground.   He also held such evidence inadmissible so far as it related to the homicide. He then discussed its applicability to the quarrel of the 25th, and in the course of his remarks said: "Now there is evidence tending to show that Lillian McGlone was struck and suffered a blackened eye at the Del Ray apartments; there is evidence tending to show that all of the actors to that transaction are deceased except the defendant.   The law accords the defendant the opportunity of himself explaining that transaction; he would have a right to do so, and his testimony, necessarily, would be uncontradicted."   Here counsel for defendant attempted to interrupt, but the court continued:   "He is not bound to testify"—and further explained his reasons for the ruling sustaining the objection.   Counsel for defendant then urged that the court's comment had thrust "the burden and duty on the defendant to make answer" and noted an exception to the objectionable statement.   Thereupon the court said:   "I have endeavored to make it clear that the jury are not to assume anything from the remarks of the court as any obligation on the part of the defendant to testify, and the jury are clearly to understand that if the defendant does not testify no presumptions whatever are to be taken against him on that account."

At the close of the evidence the court properly instructed the jury that the fact that defendant had not been called as a witness could not be considered by it for any purpose.

The remarks of the court concerning the right of defendant to testify are now urged as grossly improper and highly prejudicial, and it is not only contended that the error was not cured, but that it was incurable.

Section 7101, C. L. 1921, provides: "Hereafter in all criminal cases tried in any court of this state, the accused, if he so desire, shall be sworn as a witness in the case, and the jury shall give his testimony such weight as they think it deserves; but in no case shall a neglect or refusal of the accused to testify be taken or considered any evidence of his guilt or innocence."

We have held that grossly improper comment, by the prosecuting attorney, on defendant's failure to testify, when promptly corrected by the court, did not constitute reversible error. *Petite v. People,* 8 Colo. 518, 9 Pac. 622. In this jurisdiction the usual instruction in criminal cases, when defendant does not testify is: "While the statute of this state provides that a person charged with crime may testify in his own behalf he is under no obligation to do so and the statute expressly provides that in no case shall a neglect or refusal of the accused to testify be considered any evidence of his guilt or innocence."

Taken as a whole the remarks of the court, objected to in the instant case, when examined in the light of the explanation and instruction accompanying them, amount to nothing more than that. They were not prejudicial.

4. Hoglund, a witness for defendant, testified that the reputation of the latter as a law-abiding citizen was good. He was asked on cross-examination if he had not heard that defendant had been arrested and fined for carrying concealed weapons. An objection to the question was overruled and the witness answered in the affirmative. It is contended, on the authority of *Aiken v. People,* 183 Ill. 215, 55 N. E. 695, that that ruling constitutes reversible error. Other cases supporting the position are cited. The

true rule, however, is stated by Chief Justice Cartwright in his dissenting opinion in the Aiken Case and by the court in *State v. Killion*, 95 Kan. 371, 148 Pac. 643. That it is the rule followed in most jurisdictions see 16 C. J. p. 582, § 1125, and cases cited.

The reputation of a party or witness is a guide to jurors in passing upon questioned conduct only because it is a reasonable index to character. Character, good or bad, builds reputation, and we know the tree by its fruit. When a witness has testified to reputation, no cross-examination can be effective which precludes an inquiry into what the witness has heard and upon which his conclusions must be based. If, having ample opportunity, he has heard nothing, or has heard only what is good, the inference is most favorable. If he has heard only what is bad it is the contrary. If he says the reputation is good and admits having heard much that is derogatory, his conclusion is greatly weakened if not destroyed. Suppose a witness testifies that the reputation of a defendant is good when in fact he never heard him spoken of save by two persons, both of whom stated that he was an outlaw who had served a term in the penitentiary for murder. What a farce to protect such evidence from the acid test of cross-examination which, if applied, would annihilate it. Dean Wigmore, in his great work on Evidence, sets forth very clearly and forcefully the objections to this line of cross-examination and concludes therefrom that it should be strictly supervised by trial courts "by forbidding it to counsel who do not use it in good faith." 2 Wigmore (2nd Ed.) § 988, pp. 416, 417, 418. The same author, however, asserts the majority rule, as above mentioned, specifies the reasons upon which it is based, and admits the necessity of its maintenance, subject to the limitation above quoted. Id. p. 413. The ruling in the instant case was correct.

5. The court, on the objection of the prosecution, excluded certain evidence, or offers of evidence, of the jealous disposition of Lillian McGlone and threats made by her against the defendant and his wife, and other related

evidence of the character, habits and conduct of Lillian McGlone. These rulings are assigned as error on the ground, as now stated, that thereby defendant was precluded from presenting his theory of the transaction which is that Lillian McGlone killed Emma Vascovie and then committed suicide. The first difficulty encountered is that there is no scrap of evidence admitted, or offered, tending to substantiate such a theory, and the theory itself can only be gathered from the brief. Counsel for defendant say, "It is unquestionably the law that if a defendant in a homicide case wishes to show the bad character of the deceased in support of a plea of self-defense an overt act must first be shown." There was no pretense of threats or acts by Lillian McGlone against her own life and it is her life defendant is charged with taking. There is no evidence, or offer of evidence, of threats made by Lillian McGlone against Emma Vascovie and no hint of a possible killing in self defense by anyone. Moreover, there is not the slightest evidence admitted, or offered, remotely tending to show that Lillian McGlone came to her death by her own hand or by the act of a third person. No authority has been called to our attention which would justify the admission of the rejected evidence. The court properly excluded it.

This cause is argued by the people as for final submission. Counsel for defendant in their closing brief say: "We feel that we have indicated sufficient error to the court to justify a reversal and a new trial." The briefs are very complete as to the alleged errors argued. Those not argued are in the main unworthy of consideration. For instance the fourth assignment goes to the exclusion of evidence tending to show the ownership of Exhibit "D", the gun used in the killing. That ownership was admitted by the people. The 11th assignment goes to the limitation of the cross-examination of the handwriting expert. The court permitted that cross-examination to be carried to the furtherest limits. The defendant requested the giving of twelve instructions which were refused. Several

of these were given by the court in almost the identical language tendered. The others are so clearly erroneous as to require no discussion. Every ruling of the trial court open to question seems to have been fully argued in these briefs and no good purpose could be served by a retention of the cause here for further presentation. We therefore finally dispose of it on this application.

Finding no prejudicial error in the record the supersedeas is denied and the judgment affirmed.