No. 21300.

WILLIAM JULIAN STONE *v.* THE PEOPLE OF THE
STATE OF COLORADO.
(401 P.2d 837)

Decided May 10, 1965.

GEORGE FISCHER, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JAMES W. CREAMER, JR., Assistant, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE McWILLIAMS.

Is William Julian Stone an innocent victim of circumstances? Or is this rather an instance where the *true* culprit was apprehended when he elected to return to the scene of his crime, thereby demonstrating the soundness of the adage that a wrongdoer tends to return to the scene of his wrongdoing?

William Julian Stone, hereinafter referred to by name or as the defendant, and his son, Joseph Jerry Stone, along with one Donald Alfred Castro were jointly charged and convicted by a jury of burglary, larceny and conspiracy to commit burglary, as well as conspiracy to commit larceny. The defendant was then sentenced to a term in the State Penitentiary. By writ of error the defendant — though not his son or Castro — seeks reversal of the judgment and sentence.

The dominant issue to be resolved is whether the evidence is legally sufficient to support the verdict of the jury. The defendant urges that it is not. Hence, he says, the trial court committed error in denying his motion for a judgment of acquittal interposed by him at the conclusion of the People's presentation of evidence. Upon trial none of the three defendants offered any evidence. Accordingly, the more precise issue is whether the People's evidence was such as to warrant and require submission of the case to the jury.

■■ The evidence in the instant case is largely circumstantial in nature, there being no witness who could testify that he saw the defendant and his associates forcibly break and enter the store building occupied by the Brighton Appliance Company and steal therefrom

three portable television sets of a total value of $526.26. Nor did the defendant or either of his associates ever confess or admit commission of these crimes. In the instant case, then, does the record disclose circumstantial evidence of such quality and quantity as to be sufficient in law to support the verdict of the jury? We hold that it does.

To give meaning to our determination it becomes advisable to outline, at least briefly, those facts and circumstances which in our view do tie the defendant into the burglary of — and larceny from — the Brighton Appliance Company. Two witnesses testified that at about 8 o'clock of a summer's evening they saw three persons in the immediate vicinity of the store building occupied by the Brighton Appliance Company. It was then that the sound of "breaking glass" was heard by one of these witnesses. These two witnesses testified that minutes later they saw the three persons, whom they had previously noticed at or near the Brighton Appliance Company, running from the general area of the store building proper, and that each of the three was carrying what appeared to be a "suitcase." These three with their "suitcases" ran across some nearby railroad tracks, jumped into an automobile and hurriedly departed the scene. The two witnesses described the getaway automobile as an old model Chevrolet, with a dark color. Neither witness was close enough to identify the three who had thus sped off in the aforementioned Chevrolet.

Upon call, the local police officials went immediately to the store building occupied by the Brighton Appliance Company and their examination of the premises revealed that there had indeed been a forcible breaking and entry of the store building, the glass in the front door having been completely "broken out." The proprietor of the store testified that his check of the premises established that three portable television sets were "missing" and that they had been taken from the store without his permission or consent.

While the police were still at the scene of the burglary and at a time when the two witnesses referred to above, along with other interested citizenry, were also present, these two witnesses who only some fifteen minutes earlier had observed the dark-colored, old model Chevrolet drive away from the area, saw what to them appeared to be the same car returning to the scene. By an appropriate "holler," each witness immediately shouted to the police: "that's the car." The police thereupon proceeded to stop this vehicle, which was a dark green 1951 Chevrolet. The driver of the vehicle was none other than William Julian Stone and with him was his son, Joseph Jerry, and Castro. None of these three ever professed any knowledge of, let alone participation in, the aforementioned burglary and larceny.

Castro was subsequently searched by the police and this search disclosed numerous small particles of glass in his hair and about his head. An x-ray spectographer compared the glass particles thus found on Castro's person with glass particles taken from the floor adjacent to the broken window in the front door of the Brighton Appliance Company; and, based on his testing of these two samples, he testified that in his opinion both "were from the same recipe" and both "were made by the same formula."

A day after the burglary the police recovered the three portable television sets which had been stolen from the Brighton Appliance Company. They were found hidden inside an ashpit located on the rear of property belonging to the defendant's sister, these premises being about eight to ten blocks from the scene of the burglary.

The foregoing does not purport to be a complete recital of *all* of the incriminating facts and circumstances, but is deemed to be quite sufficient to demonstrate that there is evidence to support the jury's determination that the defendant, as well as his son and Castro, was guilty of the variety of crimes with which he was

charged. For a more complete discussion of "circumstantial evidence" and the role it can play in the field of criminal law, see *Corbett v. People*, 153 Colo. 457, 387 P.2d 409.

The defendant also claims that the trial court erred in permitting the witness Salmon, a civil and chemical engineer, to testify as an expert and express his professional opinions, for the reason that this witness, according to the defendant, was not properly qualified as an expert. In *Ausmus and Moon v. People*, 47 Colo. 167, 107 Pac. 204, an expert was defined as follows:

"An expert is one who has superior knowledge of a subject and is, therefore, able to afford the tribunal having the matter under consideration a special assistance, and his knowledge may have been acquired by professional, scientific or technical training or by practical experience in some field of human activity, conferring on him an especial knowledge not shared by men in general."

In that same case this Court went on to declare that a decision of a trial court as to the qualification of an expert "is never reversed, except in cases of abuse." Suffice it to say in this regard that in the instant case we find no such abuse of discretion on the part of the trial court. The witness Salmon both by scientific training and practical experience did possess "knowledge not shared by men in general." The witness gave a very detailed explanation of the x-ray spectograph and its method of operation. Without going into detail, the witness testified that "the main function of this apparatus is to bombard the sample with sufficient energy that we get an x-ray spectrum from the sample." The x-ray spectrum reading obtained from the sample, which in this case was the glass taken off Castro's person, was then compared with the spectrum reading from the glass fragments obtained from the floor of the Brighton Appliance Company. It was on this showing that the

witness was allowed to testify as to the results of his tests and to express his opinion that the glass found on Castro's person was the "same" as the glass from the front door of the Brighton Appliance Company. In our view under such circumstances the trial court did not err in holding that the witness was sufficiently qualified as an expert, the weight to be given the expert's opinions of course being a matter to be ultimately determined by the jury.

The remaining matter urged by the defendant as a ground for reversing his conviction and sentence has been examined and found wanting.

The judgment is therefore affirmed.

MR. JUSTICE DAY and MR. JUSTICE FRANTZ concur.