No. 23299.

RONALD ARTHUR ZIATZ v. THE PEOPLE OF THE STATE OF
COLORADO.
(465 P.2d 406)

Decided February 2, 1970.     Rehearing denied March 9, 1970.

WALTER L. GERASH, LEONARD E. DAVIES, SHELDON S. EMESON, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, PAUL D. RUBNER, Assistant, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE LEE.

PLAINTIFF in error, Ronald Arthur Ziatz, was convicted in the Denver District Court of making a false statement and order for Dilaudid, a narcotic drug, in violation of C.R.S. 1963, 48-5-17(3) and (5), and of conspiracy to commit that offense in violation of C.R.S. 1963, 40-7-35. Ziatz was sentenced to consecutive terms in the penitentiary of four to five years on the drug count and of eight to ten years on the conspiracy count.

On the evening of April 4, 1966, a man and woman entered a pharmacy on West Colfax Avenue in Denver, Colorado. The man remained in the front portion of the store and the woman proceeded to the rear and presented a prescription for Dilaudid to the druggest in charge,

requesting that it be filled. The druggist described Dilaudid as "an unusual drug in not too much use today." Because of the nature of the drug and the handwriting which he suspected not to be genuine, the druggist called the doctor whose name appeared on the prescription blank. As he commenced this telephone inquiry, the woman and man proceeded rapidly from the store. The doctor advised that the prescription was false and the druggist immediately notified the police. Investigating officers presented photographs to the druggist and to a clerk, who each identified the man and the woman, respectively, as Ronald Arthur Ziatz and Lorraine Irene Valdez. Both Valdez and Ziatz were thereafter apprehended and placed under arrest. Miss Valdez was charged jointly with Ziatz in this case, but was tried separately and is not a party to this writ of error.

The People's evidence showed that the handwriting on the prescription was that of Ziatz. He did not testify and presented only one witness, whose testimony related to his employment prior to the time of the transaction under consideration.

## THE DRUG COUNT

Ziatz contends the trial court erred in the following particulars concerning his conviction on the drug count.

1. The first specification is that the information did not state a crime under C.R.S. 1963, 48-5-17. The information charged "* * * Lorraine Irene Valdez and Ronald Arthur Ziatz did feloniously give a false name and address and make a false statement and order for Dilaudid, a narcotic drug; * * *." The defendant argues that Dilaudid is not one of the drugs specified by the statute. C.R.S. 1963, 48-5-1(14)(a) defines "Narcotic drugs" as follows:

" 'Narcotic drugs' means coca leaves, opium, cannabis, isonipecaine, amidone, isoamidone, keto-bemidone, and every other substance neither chemically nor physically distinguishable from them, and any other drug to which the federal narcotic laws may apply, and any drug found

by the state board of health, after reasonable notice and opportunity for hearing, to have an addiction-forming or addiction-sustaining liability similar to morphine or cocaine, from the date of publication of such finding by said state board of health."

C.R.S. 1963, 48-5-1 (12) defines opium as follows:

" 'Opium' includes morphine, codeine, and heroin, and any compound, manufacture, salt derivative, mixture, or preparation of opium, *but does not include apomorphine or any of its salts.*" (Emphasis added.)

■ Ziatz argues that Dilaudid is not one of those drugs specified in section 14(a) as a narcotic drug; that although Dilaudid is a drug chemically related to morphine, not all drugs so chemically related to morphine are legally proscribed by the statute which provides in subsection 12 that "opium includes morphine, * * * but does not include apomorphine or any of its salts." Therefore, the information is defective in that it fails to specifically negative the exception in the statute. It follows, Ziatz contends, that no crime is alleged in the substantive charge, and that the conspiracy count must also fail for this reason.

This argument might have merit were it not for C.R.S. 1963, 48-5-18, which provides as follows:

"Exceptions and exemptions. — In any complaint, information, or indictment, and in any action or proceeding brought for the enforcement of any provision of this article, it shall not be necessary to negative any exception, excuse, proviso, or exemption, contained in this article, and the burden of proof of any such exception, excuse, proviso, or exemption, shall be upon the defendant."

Thus, it clearly appears that it is not incumbent upon the People to negative the exception by an allegation in the information. *People v. Yeargain,* 3 Ill.2d 25, 119 N.E.2d 752; *State v. Jourdain,* 225 La. 1030, 74 So.2d 203.

■■ 2. Ziatz' second contention is that the People failed to prove that Dilaudid was a narcotic drug within

the purview and prohibition of the statute. The druggist involved in the case and the medical doctor whose prescription blank was used each unequivocally testified that the drug Dilaudid is a narcotic drug. It is argued that this was insufficient to make a prima facie case for the reason that the burden was upon the People to "negative the exception" contained in the statute. Reliance is placed upon *Salazar v. People,* 153 Colo. 93, 384 P.2d 725, where by way of *dictum* this Court, without consideration of C.R.S. 1953, 48-6-18 (now C.R.S. 1963, 48-5-18), set forth the general rule that the accused has the burden of proving he is within an exception or proviso in a statute creating an offense, except where the terms of the exception or proviso are part of the description of the offense. Clearly, C.R.S. 1963, 48-5-18, places the burden of proof of any such exception, excuse, proviso, or exemption upon the defendant, and in the present case it was Ziatz' burden to establish his defense that Dilaudid was an "apomorphine or any of its salts" so as to bring it within the exception of the statute. In discussing this very section, it is stated in 3 *R. Anderson, Wharton's Criminal Law and Procedure* § 1085:

"Any exception contained in the statute is a matter of defense to be raised by the defendant and as to which he has the burden of proof. This provision is constitutional as against the contention that it shifts the burden of proof to the defendant, since it is merely a rule of procedure and does not free the prosecution from the burden of proving the defendant's guilt beyond a reasonable doubt." See also *People v. Austin,* 22 Ill. 2d 587, 177 N.E.2d 97; *People v. Yeargain, supra; People v. Washington,* 81 Ill. App. 2d 90, 225 N.E.2d 472; *State v. Jourdain, supra.*

We find under the evidence that the People proved a prima facie case which, in the absence of evidence by the defendant to the contrary, was sufficient to sustain the conviction on the first count.

3. It is next contended that the testimony of the handwriting comparison expert was improper and in-

admissible. Ziatz first contends that the People's expert was not sufficiently qualified to testify as an expert. We have examined the evidence of qualifications of the witness and disagree with this contention. We find no abuse of discretion on the part of the trial court in permitting the witness to testify as an expert. *Stone v. People,* 157 Colo. 178, 401 P.2d 837; *Bradford v. People,* 22 Colo. 157, 43 P. 1013.

■■ Ziatz complains that the court erred in admitting into evidence Exhibit B which purported to be a letter written by Ziatz to a Mr. Grout, an employee of the state of Colorado. Mr. Grout testified that he knew Ziatz and that he received the letter through the mail, although he did not in fact know that Ziatz had written this letter. It is contended that Exhibit B was incompetent as there was no proof that the defendant in fact wrote the letter. We agree that in the absence of testimony authenticating Exhibit B, it was incompetent and inadmissible. However, the error here was not prejudicial in view of the authentic handwriting sample, Exhibit C, a jail book-in slip, which contained Ziatz' signature. Exhibit C was compared with Exhibit A, the questioned prescription, by the handwriting expert and he concluded that Exhibit A was written by Ziatz. The weight of his opinion was for the jury to determine.

Ziatz' challenge to the admissibility of Exhibit C, the book-in slip, as being obtained solely for testimonial purposes, after Ziatz had been charged in the present case, is without support in the evidence and is not worthy of further comment.

Likewise, we find it unnecessary to discuss alleged errors relating to admission into evidence of Exhibits H, I and J, which were enlargements of portions of Exhibits A, B, and C, all of which matters relate solely to the weight of the expert's opinion.

### THE CONSPIRACY COUNT

■ 4. Ziatz asserts several errors in relation to his conviction on the conspiracy count. We find it unneces-

sary to consider such specifications in view of what we consider a complete absence of substantial evidence to support the conspiracy conviction.

Ziatz' motion for an acquittal at the conclusion of the People's case was denied. The motion for judgment of acquittal should have been granted as to the conspiracy count. We have searched the record for any evidence that Ziatz conspired with Valdez or any other person to commit the substantive offense charged in count 1 of the information, which was that of making a false statement and order for Dilaudid under C.R.S. 1963, 48-5-17(3) and (5). We note that Ziatz was not charged under subsection 1 of section 17 with obtaining a narcotic drug by use of a false name or the giving of a false address. Although he was charged under subsection 5 of section 17 with making a false statement and order for Dilaudid, he was not charged with the alternative offense described in subsection 5 — that of "uttering" a false prescription and order. This is of significance, since the conspiracy count relates only to the first count of the information and not to other criminal conduct.

The evidence at the trial was directed to two phases of the transaction. The first phase related to the activities at the pharmacy where Valdez and Ziatz attempted to obtain the narcotic drug by uttering the false prescription, a crime of which they were not here charged. The second phase related to the fabrication of the false prescription. There was no direct evidence whatsoever as to the fabrication of the false prescription. Neither Ziatz nor Valdez testified, nor did any other witness, concerning this phase of the case. The only evidence that Ziatz fabricated the prescription was that of the handwriting expert. There was a complete lack of any proof that Ziatz and Valdez were acquainted with each other or had any association at or prior to the time when the prescription was fabricated, nor were there any circumstances shown from which it could reasonably be inferred that they illegally agreed, conspired or cooperated to fabricate the prescrip-

tion. Thus, the conclusion that Ziatz and Valdez illegally conspired to make the false statement and order is based solely upon one circumstance, that they jointly attempted to obtain the narcotic drug by means and use of the false prescription.

In order to convict one on circumstantial evidence alone, the facts and circumstances must be such as are inconsistent, upon any reasonable hypothesis, with the innocence of the defendant, and incapable of explanation upon any reasonable hypothesis other than that of the guilt of the defendant. It is not necessarily to be inferred from the act alone of uttering or passing a false prescription that the actor fabricated or was an accomplice to the fabrication of the false prescription. Such is the situation here. No doubt that Ziatz and Valdez could have been charged under the circumstances of this case with the commission of conspiracy to commit some other offense, *e.g.*, conspiracy to utter a false prescription, and have been successfully convicted on the evidence presented in this case. See *Hill v. State*, 266 P.2d 979 (Okl. Cr.). However, such does not justify a conviction of conspiracy to commit the offense with which they were here charged. The judgment of conviction for conspiracy must therefore be set aside.

## OTHER ALLEGED ERRORS

5. Ziatz claims error in the court's permitting endorsement of a witness, Minnie Kornblatt, one day prior to the trial of the case. At the hearing on the motion to endorse this witness, the district attorney informed the court that he had just learned of the witness and he apprised the court of the manner in which the witness became known to him. In permitting the endorsement, the court ordered that defendant be allowed to interview the witness prior to her testifying, and if at that time sufficient reasons were shown for a continuance, such would be granted by the court. Defendant's counsel did interview Kornblatt prior to her testifying, but did not move for a continuance. We find

68

no unfair advantage under these circumstances and no abuse of discretion by the court. This alleged error is without merit.

6. Ziatz alleges he was denied a speedy trial in violation of his constitutional rights. The information was filed April 13, 1966, and trial commenced April 11, 1967. The provisions of Colo. R. Crim. P. 48 (b) were complied with in this respect. *Maes v. People,* 169 Colo. 200, 454 P.2d 792. It is argued that because the court allowed the endorsement of additional witnesses on four different occasions and that the trial date was continued five times, Ziatz was prejudiced thereby and denied due process. He does not, however, point out in what manner he was prejudiced by these events. During this period of time, Ziatz was an inmate of the Colorado State Reformatory. Subject to the overriding limitation of Colo. R. Crim. P. 48 (b), each case must be considered in the light of the attending circumstances. *Medina v. People,* 154 Colo. 4, 387 P.2d 733. The burden is upon a defendant to show that an expeditious trial was denied him. The burden has not here been met.

7. Ziatz predicates further error upon the court's instruction number 20 concerning defendant's failure to testify, which instruction is based upon C.R.S. 1963, 39-7-15. No objection was made to the giving of this instruction at the trial, nor was the matter raised in defendant's motion for a new trial. *Ortega v. People,* 162 Colo. 358, 426 P.2d 180. Furthermore, as the instruction was phrased it has heretofore been specifically approved by this Court in *Brindisi v. People,* 76 Colo. 244, 230 P. 797. We find nothing in *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, which requires us to reach a different conclusion.

Error is also asserted that instruction number 11 concerning accessory was improperly given. Here, again, no objection was made to this instruction at the trial and, although it was raised in the motion for new trial, we

do not consider it prejudicial under the circumstances of this case.

The judgment of conviction on count 1 of the information is affirmed. The judgment of conviction on count 2 of the information charging conspiracy is hereby reversed, the sentence vacated, and the information as to the charge of conspiracy hereby dismissed.

MR. CHIEF JUSTICE MCWILLIAMS, MR. JUSTICE PRINGLE and MR. JUSTICE KELLEY concur.

---

## ON PETITION FOR REHEARING

MR. JUSTICE LEE:

Defendant on petition for rehearing asserts for the first time that the sentence imposed by the trial court for conviction of the substantive felony charge under C.R.S. 1963, 48-5-17, was unlawful and in violation of the equal protection clause of the fourteenth amendment to the United States Constitution and in violation of §§ 6, 16, 18, and 25 of Article II of the Colorado constitution. His reason for this contention is predicated on the proposition that the identical offense of which defendant was convicted is also proscribed in C.R.S. 1963, 48-7-6, and is defined to be and is punishable only as a misdemeanor under C.R.S. 1963, 48-7-7; whereas defendant was punished for the conviction of a felony under C.R.S. 1963, 48-5-20 (2) and sentenced to a term of four to five years in the state penitentiary.

An examination of the statutes referred to reveals, contrary to defendant's contention, that the conduct proscribed by 48-5-17 concerns "narcotic drugs" and is not the same or identical conduct forbidden by 48-7-7 which concerns "habit-forming drugs." The authority cited in support of defendant's contention has no appli-

cation to the facts in the instant case. We find defendant's assertion of error to be without merit.

The petition for rehearing is denied.