## No. 16,536.

CAMPBELL ET AL. *v.* THE PEOPLE.

(232 P. [2d] 738)

Decided May 28, 1951.

Mr. EDWARD C. HASTINGS, for plaintiffs in error.

Mr. JOHN W. METZGER, Attorney General, Mr. RAYMOND B. DANKS, Assistant, Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. NORMAN H. COMSTOCK, Assistant, for the people.

*En Banc.*

MR. CHIEF JUSTICE JACKSON delivered the opinion of the court.

PLAINTIFFS in error were each found guilty in the trial court of the crime of aggravated robbery and, after a motion for a new trial had been overruled, were sentenced to the state penitentiary—defendant Avery for a period of not less than three nor more than four years, and defendant Campbell for a period of not less than five nor more than seven years.

Nine assignments of error have been filed, which are argued under four points. These will be discussed later.

The prosecuting witness was Gertrude Johnston, age seventy-two, "a clerk in the Triple A Office in the Springfield Soil Office," a former teacher and a former county treasurer of Baca county. The gist of her testimony was that on December 15, 1949, she was living alone on her farm about ten miles south and four miles west of Holly, Colorado; that on that day about two-thirty or three o'clock in the afternoon defendants, who were identified by her at the trial, drove a dark, two-seated car into her yard; one of the men, Campbell, alighted, approached her and inquired about pasture for sheep. She invited him into the house where she found the name of a person who might have pasture. Campbell also inquired whether her property was for sale, then went back to his car, talked to Avery, and in a few minutes both defendants came into her house. Campbell then told her, "We aren't here for land. We aren't inter-

ested in land. We're here for money. We want the cash." She took her coin purse from a drawer; Avery jerked it from her hand, saying "Let me have it." He took three dollars from the purse and put it in his pocket. At her request he returned the purse, and she gave him the three cents still remaining in it. Avery was armed with a club, a piece of garden hose, which he brandished. Campbell had a little revolver which part of the time had been pointed at her and which he carried on his right hip. Avery rifled the book case and asked her if there was anything else. She mentioned a locker in the northeast room which Avery examined. Campbell, meanwhile fumbling around her waist, told her not to get rough and asked if she had any guns. When Avery could not get into the locker, she gave him the key and stated that she had a gun. It was a shotgun, which Avery obtained and unloaded. Defendants then told her they were going to take her for a little ride. They took the key from her car. She asked for her coat, but they took her without letting her get it and told her not to get rough or that they would get rough. She rode in the front seat between them. After a short drive they said they would let her out with the understanding that she did not squeal on them. They threatened to make it rough on her if she did. She was instructed to wait three or four hours until dark. The car defendants drove was a Chevrolet with no rear license plate. After they let her out she went home and drove to Holly to report the incident to the sheriff. She pointed out that one of them limped, and identified that defendant as Avery. The latter testified his left leg had been injured while he was in military service.

Ben Lindauer, who lived half a mile west and half mile north of the home of prosecuting witness, testified that defendants drove up to his place about a quarter to twelve on December 15, 1949; that he had known both defendants by sight prior to that time. In the course of conversation about different matters, Campbell asked:

"Who lives across over there in that house? I said, A lady by the name of Miss Gertrude Johnston lives there. That used to be Jake Howser's Ranch. She bought that and her brother lived there the last three or four years and put in some wheat, and her brother left and I don't . know where he's at. Q. What, if anything, did Campbell say? A. He says, 'She lives over there by herself?' I says, Yes, I think she's there, as far as I know. She's been there just recently. A lady staying out there by herself? Yes. That's all I know that was said about that."

John Hodson, the sheriff of Prowers county, testified that Avery told him that on December 15, 1949, he and Campbell hauled one load of wheat west of Bristol at Mr. Nichols' place, got his car south of Holly, then went back into Holly, and after dinner went south of Holly, and that Avery then said, "I guess we done what they say we done."

James Harris, undersheriff of Prowers county, testified that Avery's car was a 1946 Chevrolet two-seated, dark automobile, and that he rode in it with Avery from Paonia, where the latter was arrested, back to Prowers county. On this trip Avery told him, "I will plead guilty if Carl wants to. I want to know what he wants to do first."

■ 1. The first point argued is that the verdict of the jury is contrary to the law and the evidence. The first assignment under this heading raises the question of the sufficiency of the evidence. The motion for new trial did not raise this question. Under Rule 59 C (e), R.C.P. Colo., only questions presented in the motion for new trial will be considered on review. *Welch v. People,* 115 Colo. 42, 46, 170 P. (2d) 781. In *Perry v. People,* 116 Colo. 440, 443, 444, 181 P. (2d) 439, we held that the questions argued in support of similar assignments of error were insufficient and not properly presented.

Even if we consider the matter on the merits and treat the assignments as indicating an insufficiency of

the evidence to sustain the charge of aggravated robbery, we believe that such a contention is not tenable. The evidence of the prosecuting witness was uncontradicted and shows that one of the defendants entered her home with a club—a piece of garden hose—and the other man had a gun, and these were at one time or another respectively flourished and pointed at her.

■■ In the information it was charged that the two defendants were "armed with a deadly weapon, to-wit, a pistol, loaded with gunpowder and leaden ball, then and there with intent, if resisted, to kill and maim and wound one Gertrude Johnston * * *." It is argued that there is no evidence that the gun was loaded with gunpowder or leaden ball, or that any statement was made threatening Gertrude Johnston with the gun. In *McNamara v. People*, 24 Colo. 61, 67, 48 Pac. 541, a case involving assault with intent to commit robbery, we approved an instruction that the law will presume that the firearm was loaded and that it was unnecessary for the prosecution to prove such fact. As to an alleged lack of threats, we believe the recital of the prosecuting witness shows a series of threats. In *Rowan v. People*, 93 Colo. 473, 475, 26 P. (2d) 1066, we said, "The putting in fear and taking the property constitute the gist of the crime * * *."

2. It is argued that, "The court erred in refusing counsel for defendants in the opening statement to outline conduct and statements of sheriff and deputy district attorney to witnesses and in severely admonishing counsel for offering to outline such conduct and statements." In the opening statement, Mr. Hastings, counsel for defendants, said:

"The Sheriff and a member of the District Attorney's Office called on these people and attempted to intimidate them.

"Mr. Ham [the District Attorney]: That's a lie and you know it.

"The Court: Mr. Hastings, the Court should admonish you that statements like that are not proper.

"Mr. Hastings: I am not reflecting anything on Mr. Ham; I want that understood. One of the witnesses that we have talked to—

"Mr. Ham: He is supposed to show what the evidence will show and there's no place for argument.

"The Court: That's right. The Court will admonish you not to reflect on counsel.

"Mr. Hastings: I didn't reflect on the counsel, Your Honor.

"The Court: Any questions in your mind as to misconduct on the part of the District Attorney, or Sheriff, may be reported to this Court. That isn't a statement for the jurors. The jury is instructed to disregard the statement by the defense counsel made with reference to an alleged witness.

"Mr. Hastings: As I was telling the Court, I am sorry, Mr. Ham, if you felt that was a reflection; I didn't intend it that way. That was evidence as to what a witness had informed us.

"Mr. Ham: Okay.

"Mr. Hastings: I except to the Court's statements."

 Defendants' counsel argues that he was restricted in his opening statement to the jury and also that defendants did not have a fair trial because of prejudice arising from the District Attorney's reply. Neither of these points was presented in defendants' motion for a new trial and both seem to come under the general rule that the court will not consider alleged errors not presented in that motion. *Welch v. People, supra.*

Counsel did not detail the statements of the sheriff and member of the district attorney's staff who were alleged to have intimidated a witness. The record shows that defendants' witness, Herman B. Nichols, whose testimony, if believed by the jury, would have established an alibi for the two defendants, was interviewed by a Mr. Shinn of the district attorney's office and Sheriff Hodson. In the course of this interview and in

answer to a question as to what else was said, Nichols testified that Sheriff Hodson then remarked: "that I wanted to be sure and not stick my neck out." This conversation occurred at the time Nichols was served with a subpoena to testify as a witness in the case, and if the quoted remark of Sheriff Hodson is meant to imply that there was intimidation, it is evident that it had no effect as Nichols subsequently testified at the trial freely on behalf of the defendants. It will be noted that the part of counsel's statement that was interrupted by the foregoing colloquy did not bear on the nature of his defense, and the evidence he intended to offer to sustain it. What he said would not have constituted a defense.

The trial court's instructions contained the following paragraphs:

"These instructions contain the law that will govern you in this case, and in determining the facts you should consider only the evidence given upon the trial. Evidence offered at the trial and rejected by the Court, and evidence stricken from the record by the Court, should not be considered by you. The opening statements and the arguments of counsel, and the remarks of the Court and of Counsel, are not evidence.

"The arguments, statements and objections made by counsel to the Court or to each other, and the rulings and orders made by the Court, and the remarks made by the Court during the trial and not directed to you, should not be considered by you in arriving at your verdict. The Court did not, by any words uttered during the trial, and the Court does not by these instructions, give or intimate, or wish to be understood by you as giving or intimating, any opinion as to what has or has not been proven in this case, nor as to what are or are not the facts in the case."

3. Point 3, that the defendants did not have a fair trial, is a continuation of the argument concerning the opening statement of the defense attorney and is covered

in the foregoing discussion. We do not believe points 2 and 3 constitute reversible error.

4. It also is contended that there was error in overruling defendants' motion for a new trial.

The defense relied upon an alibi. Defendant Avery testified that at the time the crime was committed he and Campbell were working in a field some sixteen or more miles from the scene of the crime and that his car, identified as having been driven by the robbers, was in a garage distant from that scene. His testimony was corroborated by Clyde Campbell, a brother of defendant Campbell, and also by Clyde Campbell's wife, who is the sister of defendant Avery. Vernon B. Nichols also testified to the same effect.

At the time of the motion for new trial the defense submitted affidavits of three additional persons: LaVerne Nichols, aged fifteen (daughter of Vernon B. Nichols), Alma Nichols and Elmer Mourer; also an affidavit of W. A. Eller. The latter's affidavit was to the effect that he was confined in the county jail of Prowers county on December 31, 1949; that he observed Harold Avery's automobile, a 1946 model, black Chevrolet coach, parked south of the Court House, and that the rear license plate was on the car during the entire day; that the automobile remained there until January 3, 1950, and that the rear license plate was on it until that date. It is argued that a new trial should have been granted by reason of the newly discovered evidence shown by these affidavits. The matter contained in the three other affidavits, however, was merely cumulative as to the fact that Carl Campbell and Harold Avery were working in a field about one and one-half miles east of Vernon B. Nichols' house during the afternoon of December 15, 1949, until about four o'clock. The evidence is therefore not new. Furthermore, it is open to the objection that it must have been available at the time of the trial. At least there is no explanation given as to why, if the testimony of one member of the Nichols family was

available at the time of the trial, that of two other members should not also have been available. Likewise, testimony of Elmer Mourer, if it is assumed he was in the Vernon Nichols' field on December 15, 1949, with other affiants and witnesses, must be assumed to have been available at the date of the trial. On the matter pertaining to the alibi, there was testimony on rebuttal tending to show that the matters referred to by defense witnesses as having taken place December 15, actually occurred on December 14, 1949. We believe there was sufficient competent evidence to warrant the jury in reaching the two verdicts, and that the trial court committed no error in denying the motion for a new trial.

The judgment accordingly is affirmed.