No. 24791

**The People of the State of Colorado
v. Arthur Everett Small, Jr.**
(493 P.2d 15)
Decided January 24, 1972.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Michael T. Haley, Assistant, for plaintiff-appellee.

Arthur Everett Small, Jr., pro se.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

Arthur Everett Small, Jr. was the defendant in the trial court and is the appellant here. The defendant was convicted of aggravated robbery and conspiracy to commit aggravated robbery, and he was thereafter sentenced to the Colorado State Penitentiary. He has appealed from the judgment and sentence of the trial court and has alleged that errors occurred which require either dismissal of the charges against him or reversal and a new trial. As grounds for reversal or dismissal, the defendant has presented four primary issues for us to pass upon. He claims that he was denied a speedy trial. He also asserts that his conviction followed the trial court's improper instructions to the jury on the credibility of witnesses and of an accomplice and should, therefore, be set aside. Another contention is that the statutory crime of robbery is so ambiguous in its terms that it is unconstitutional. His last argument is that the evidence was insufficient to sustain a conviction. We affirm.

## THE FACTUAL BACKGROUND
The defendant, together with William D. Karstens, Donald

B. Cheatham, and John T. Brazil, was at the outset jointly charged with aggravated robbery and conspiracy to commit aggravated robbery. Prior to the trial, on the defendant's motion, a severance was ordered, and the defendant was granted the right to be tried separately from the other defendants. After the severance was granted, the other defendants entered into a plea agreement and plead guilty to the crime of conspiracy. Both Brazil and Cheatham were subsequently granted probation and left the State of Colorado. The prosecution also dismissed all pending charges against them. They were both endorsed as prosecution witnesses against Small. At the trial, Brazil and Cheatham provided evidence that amply tied the defendant Small into the robbery and conspiracy.

The events which resulted in the filing of the information centered around the robbery of Kelley's Bar and Grill. All of the defendants, with the exception of Arthur Everett Small, Jr., were Vietnam war veterans who were receiving treatment at Fitzsimmons General Hospital. The evidence at the trial established that on April 4, 1969, Karstens picked up Brazil and Cheatham in a blue Ford Falcon that was owned by the defendant Small. The three defendants had agreed to meet Small at the Barmaid Bar. When the parties met, Small and Karstens, according to the testimony, told the other defendants that a holdup of Kelley's Bar and Grill would net between $4,000 and $8,000 which would be equally divided among the four participants in the robbery. After the meeting at the Barmaid Bar, Small gave the other three defendants a briefcase which contained two revolvers and some ammunition.

The plan which the defendants formulated at the Barmaid Bar was that all of the patrons in Kelley's Bar and Grill would be put in the basement through a trap door which was located behind the bar so that an escape could be effected after the robbery was completed. The record reflects that Small drove Karstens, Cheatham, and Brazil to Kelley's Bar and Grill. Small was to remain in the get-away car during the robbery and keep the motor running so that the car could be

used by the defendants to escape. While the robbery was being perpetrated, Small's car started to smoke, and the engine died and could not be started. The robbery, however, was carried out as planned with the revolvers provided by Small but was not as successful as the parties had anticipated and netted only $175. When Karstens, Cheatham, and Brazil left Kelley's Bar and Grill, they got into the car with Small to effect a get-away, but they soon realized that the car was disabled. Once escape in Small's Falcon was frustrated and the defendants' plight became known, all four defendants abandoned the car and started running from the site of the crime. However, Small soon left the other defendants and decided to return and retrieve his broken-down car. Small's car required that the battery be jumped, and the defendant was fortunate in finding a friend in the area who was willing to assist him in the use of a jumper cable to get his car started. After Small and his friend got the car started, Small left the scene in his Falcon and was arrested not long thereafter by the police. All of the defendants, with the exception of Small, were arrested within six blocks of the robbery, hiding in various places, and in possession of the revolvers provided by Small and the money taken in the robbery.

At the trial, the defendant, in an effort to refute the testimony of Brazil and Cheatham, took the stand and denied that he knew any of the other defendants. As a witness, Small admitted that he had been convicted of two felonies. He also testified that he was not a participant in the robbery or the conspiracy to commit the robbery. On cross-examination, Small admitted giving the police a statement which contradicted his testimony that the other defendants had gotten into his car after the robbery was committed and had threatened him and ordered that he drive them from the scene of the crime. In Small's statement to the police, he said that the defendants got out of his car when it could not be started and that he chased the other defendants for a distance and then thought better of it in view of his past convictions. Small told the court and jury that he just didn't want to get

involved in the robbery or to be implicated in any way with the other defendants.

At the trial, in inculpating the defendant Small, Brazil and Cheatham admitted their plea agreement and even disclosed that their lawyer had informed them they would be charged with offenses that had been dropped and would be returned to Colorado in handcuffs if they did not appear at the defendant's trial and testify. Both Brazil and Cheatham admitted that they had been granted immunity from further prosecution when they testified. They also admitted using the guns provided by Small in the robbery and denied any intent to harm the robbery victims while admitting that they made menacing gestures and used threatening language in carrying out the robbery.

## I.
## SPEEDY TRIAL

The defendant was granted a separate trial. Various delays occurred in causing the case to be set for trial stemming from illness of defense counsel, disqualification of one trial judge, illness of another trial judge, and at least four motions for a continuance that were directly attributable to the defendant. One of the defendant's motions for a continuance was predicated upon the prosecution's endorsement of Brazil and Cheatham as witnesses for the prosecution.

In viewing the record, we must conclude that much of the delay that is now claimed to be of constitutional dimension is directly attributable to the defendant's own requests. The information in the instant case was filed on April 9, 1969, and trial was commenced on March 30, 1970, well within the period prescribed by Crim. P. 48 (b). The record is devoid of evidence of prejudice to the defendant, apart from the fact that he was unable to make bail.

A defendant is guaranteed a speedy trial by our Constitutions. U.S. Const., amend. VI; Colo. Const., art. II, § 16. The circumstances surrounding each case must be looked at to determine whether or not the defendant has been granted a speedy trial. *Casias v. People,* 160 Colo. 152, 415 P.2d 344 (1966). Basically, a speedy public trial is a trial

consistent with the court's business. *Medina v. People,* 154 Colo. 4, 387 P.2d 733 (1964). The one-year proscription of Crim. P. 48 (b) defines the outside limits for prosecution, and prejudice to the defendant could dictate that a case be dismissed for failure to grant a speedy trial, even though the one-year period set forth in the rule has not expired. *Scott v. People,* 176 Colo. 289, 490 P.2d 1295 (1971); *Jaramillo v. District Court,* 174 Colo. 561, 484 P.2d 1219 (1971). However, the defendant has the burden of establishing that he was denied a speedy trial and was prejudiced as a result of that denial. *Ziatz v. People,* 171 Colo. 58, 465 P.2d 406 (1970). Here, the delays which occurred are not solely attributable to the prosecution but must be recognized to be in part a product of the defense.

## II.
## JURY INSTRUCTIONS

The defendant has claimed that the court erred in not sustaining objections to the court's instructions to the jury. The court's instructions encompassed every aspect of the case before the court. The instructions relating to the credibility of witnesses squared with the Colorado Pattern Jury Instructions and were properly given. *See* Colorado Pattern Jury Instructions, 3.15.

Inasmuch as the testimony that inculpated the defendant in both the conspiracy and the robbery came from accomplices, the court gave the following instruction to the jury:

"While you may convict upon uncorroborated testimony of an accomplice, still you should act upon his testimony with great caution, subjecting it to a careful examination, in the light of the other evidence in the case, and you are not to convict upon such testimony alone unless satisfied, after such careful examination, of its truth. If not so satisfied you cannot convict without such corroboration of the same as will convince you beyond a reasonable doubt, and in the absence of such corroboration, your verdict should be not guilty.

"Corroborating evidence means such evidence, either direct or by proof of surrounding facts and circumstances, as tends

to establish the participation of the defendant in the commission of the offense."

The instruction on accomplices, when coupled with the instruction on credibility, adequately informed the jury of the factors that they were to consider in determining the credibility and weight which should be given to the testimony of Brazil and Cheatham. *Bradley v. People,* 157 Colo. 530, 403 P.2d 876 (1965); *Ellis v. People,* 114 Colo. 334, 164 P.2d 733 (1945); *Moynahan v. People,* 63 Colo. 433, 167 P. 1175 (1917); *Wisdom v. People,* 11 Colo. 170, 17 P. 519 (1887); *Solander v. People,* 2 Colo. 48 (1873).

The trial court also properly advised the jury on the manner in which they should determine the credibility of the defendant once he took the stand on his own behalf. *Hinton v. People,* 169 Colo. 545, 458 P.2d 611 (1969); *Mitsunaga v. People,* 54 Colo. 102, 129 P. 241 (1912); *Epley v. People,* 51 Colo. 499, 119 P. 155 (1911); *Boykin v. People,* 22 Colo. 496, 45 P. 419 (1896); *Minich v. People,* 8 Colo. 440, 9 P. 4 (1885). After reviewing the instructions, we find that the jury was fully and fairly instructed on the law of the case.

### III.
### UNCONSTITUTIONALITY OF THE ROBBERY STATUTE

The defendant, as a third ground for reversal, ingenuously asserts that the Colorado statute on aggravated robbery is unconstitutional and violative of the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution. *See* 1967 Perm. Supp., C.R.S. 1963, 40-5-1. If the defendant is to prevail in this argument, he must overcome a presumption of the constitutionality of the robbery statute by proof of the invalidity of the statute beyond a reasonable doubt. *Flank Oil Company v. Tennessee Company,* 141 Colo. 554, 349 P.2d 1005 (1960).

In our opinion, the Legislature, in drafting the robbery statute, did not fail to provide clear-cut definitions of the crimes which we have identified as simple and aggravated robbery. The gist of the crime of simple robbery is the putting in fear and taking of property of another by force or intimidation. *People v. Gallegos,* 130 Colo. 232, 274 P.2d

608 (1954); *Campbell v. People,* 124 Colo. 8, 232 P.2d 738 (1951); *Rowan v. People,* 93 Colo. 473, 26 P.2d 1066 (1933). Aggravated robbery is distinguished from simple robbery by the fact that the accused or a confederate is armed with a dangerous weapon with the intent, if resisted, to maim, wound, or kill. *See Ruark v. People,* 157 Colo. 320, 402 P.2d 637 (1965); *Hutton v. People,* 156 Colo. 334, 398 P.2d 973 (1965).

In *Boyce Motor Lines v. United States,* 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952), the Court made the following statement in laying down criteria for the evaluation of a statute that is alleged to be unconstitutionally vague:

"A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation. But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line."

Our reading of the statute in a common-sense manner does not disclose the existence of ambiguities that would trap or ensnare the unwary.

In our view, the statute also complies with the equal protection clause of the Fourteenth Amendment. The legislative classification of the crimes of robbery is neither arbitrary nor discriminatory and operates equally on all persons within the classification. *Accord, People v. McKenzie,* 169 Colo. 521, 458 P.2d 232 (1969).

## IV.
## SUFFICIENCY OF THE EVIDENCE

The record contains ample evidence to sustain the conviction of the crimes of aggravated robbery and conspir-

acy to commit aggravated robbery. Therefore, the trial court was correct in denying the defendant's motion for judgment of acquittal. *McClendon v. People,* 174 Colo. 7, 481 P.2d 715 (1971); *Ruark v. People,* 164 Colo. 257, 434 P.2d 124 (1967).

Having examined the other questions raised in the defendant's brief and having found them to be without merit, we affirm.

Judgment affirmed.