People of the State of Illinois, Plaintiff-Appellee, v. Frank Washington, Defendant-Appellant.

Gen. No. 50,410.

First District, Third Division.

September 8, 1966.

Howard T. Savage, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Sheldon Sandman, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

The defendant, Frank Washington, was found guilty by a jury of having unlawfully possessed narcotic drugs. He was sentenced to the Illinois State Penitentiary for not less than five nor more than ten years.

On May 14, 1964, police officers entered the premises at 6945 S. Cornell Avenue, with a search warrant naming one Mary Canady. When the officers went to the apartment of Mary Canady, the defendant opened the door and was given a copy of the search warrant. The defendant and Mary Canady were arrested, and in a search of the defendant in the apartment the police seized a tinfoil package of powder and a package of crushed green substance. Another package of white powder was found in the kitchen of the apartment. Defendant stated that everything found in the apartment belonged to him.

The substances seized were taken by the police to the crime laboratory, where they were examined by a police chemist on May 15, 1964. The chemist identified the three packages in open court as those whose contents he had previously examined and found to contain heroin and marijuana.

The defendant raises numerous points on appeal which he contends justify a reversal of his conviction. These are: (1) That he was denied representation by counsel of his own choice and compelled to retain counsel who in fact provided an inadequate representation in which no attempt was made to protect his constitutional right not to be convicted by use of evidence unlawfully obtained which resulted in a failure of constitutionally guaranteed due process; (2) that the evidence does not establish that the substances identified by a chemist as cannabis and heroin were seized from him in the apartment as testified to by police officers, and thus there is no evidence to support the verdict and judgment; (3) that the indictment fails to charge a criminal offense and therefore his motion in arrest of judgment was erroneously overruled; (4) that the evidence does not establish that the drug identified as cannabis (marijuana) was of the kind and quality defined as "narcotic drugs" within the applicable statute; (5) that neither venue nor his age were properly established in the trial court.

The defendant contends that he was denied the right to representation by counsel of his own choice because of the following colloquy between himself and the court upon the call of his case:

"The Defendant: Your Honor?
The Court: Yes.
The Defendant: Could I have time to change counsels, Your Honor?
The Court: No, it is too late.
The Defendant: I'm not satisfied with counsel.
The Court: Not at this stage of the proceedings. Take your seat."

The defendant had been arrested on May 14, 1964, indicted on July 31, 1964, and arraigned on August 10, 1964. On this latter date the defendant's counsel filed his appearance. The trial was set for September 9, 1964. Nothing appears of record for said date, but on October 6, 1964, an order was entered causing the defendant's bond to be forfeited with warrant to issue for his arrest. On December 17, 1964, the State and the defense stated that they were ready to proceed to trial. The record fails to reveal any dissatisfaction by defendant with his attorney other than that noted previously on the date set for trial.

The defendant has cited two United States Supreme Court cases, Gideon v. Wainright, 372 US 335, and Escobedo v. Illinois, 378 US 478, to support his contention that he was denied the right to be represented by counsel of his own choice. In our opinion, neither of these cases supports the defendant. Gideon involved a case where the trial court denied a request of an indigent prisoner to appoint counsel for him, while in Escobedo the police denied defendant's request to see his attorney after he was arrested on a murder charge. The facts and circumstances supporting these cases are clearly distinguishable from those in the instant appeal. Here the defendant had

94

counsel of his own choosing and on the day set for trial sought time in order to change his counsel.

██ ██ It appears that the defendant was not denied the right to choose his own counsel—in fact he did—but that the court denied him a continuance to obtain new counsel. This request was made on the day set for trial, and it was entirely within the discretion of the trial court to deny a continuance at such a late date in the proceedings. This decision by the trial court will not be questioned by a court of review unless the trial court has abused its discretion. People v. Quevreaux, 407 Ill 176, 95 NE2d 62; People v. Moore, 368 Ill 455, 14 NE2d 494; People v. VanNorman, 364 Ill 28, 2 NE2d 891.

In People v. Solomon, 24 Ill2d 586, 182 NE2d 736, the court stated on page 589: "The granting of a continuance to permit . . . substitution of counsel, necessarily depends upon the particular facts and circumstances surrounding the request, and is a matter resting within the sound judicial discretion of the trial court." The court cited People v. Surgeon, 15 Ill2d 236, 154 NE2d 253, and People v. Clark, 9 Ill2d 46, 137 NE2d 54, on this point. On page 590 the court continued: "Nor, under the circumstances reflected in this record, can it be said the trial court was guilty of an abuse of discretion because it failed to grant a continuance in the face of defendant's efforts to obtain other counsel. While an accused in a criminal case does indeed have the constitutional right to be represented by counsel of his own choosing, it is likewise true that such right may not be employed as a weapon to indefinitely thwart the administration of justice, or to otherwise embarrass the effective prosecution of crime."

The defendant argues on appeal that the reason for the dissatisfaction with his attorney was that no effort was made to challenge the use of unlawfully obtained evidence at the trial, and that the attorney was respondent in a proceeding which ultimately resulted in his disbarment. Neither of these points are properly before this court.

95

The record reveals no motion by defendant through his counsel to suppress the evidence, and consequently the search warrant in the instant case is not a part of this record. The defendant asks that this court take judicial note of the fact that the search warrant pursuant to which entry was made into the apartment of Mary Canady, in which apartment he was found, and under color of which he was arrested, was declared to be void by the same trial judge in the case of People v. Canady, and that the evidence seized from him during the search and received at his trial was unlawfully obtained.

The defendant does not ask that this court take judicial note of these matters for the purpose of determining whether or not the evidence against him established his guilt, but for the purpose of determining whether under all of the circumstances the proceedings against him possessed the fundamental fairness required by the United States and Illinois Constitutions.

■ ■ The record in the case of People v. Canady and the relevant search warrant are not before this court. The defendant admits that he is aware of the precedent that a court will not take judicial notice of the contents of records except in proceedings pending before it. He has also stated in his brief that he realizes that here he is not only asking this court of review to take judicial notice of a record in a case other than that pending before it, but of a record of the lower court.

There is no precedent for this court to consider the proceedings in the lower court in the case of Mary Canady. In People v. Hunt, 357 Ill 39, 190 NE 809, the court stated at page 40: "A Court will not take judicial notice of the contents of its records except in the proceeding pending before it."

Similarly, there is nothing in this record to indicate whether defendant's attorney was the respondent in a disbarment proceeding. Even if this fact were a part of

96

this record, we fail to see how defendant was prejudiced thereby in the instant case.

■■ The mere fact that defendant's counsel failed to move to suppress the evidence is not a sufficient ground upon which to reverse this cause. Defendant employed his own counsel and cannot now complain about the allegedly faulty representation which he received. (People v. Palmer, 27 Ill2d 311, 189 NE2d 265.) It was stated in People v. Morris, 3 Ill2d 437, 121 NE2d 810, at page 444: "Where the defendant selects his own attorney the court has held, almost without exception, that the failure of such counsel to exercise care and skill in the trial of the case does not afford a basis for reversing a judgment of conviction." (Citing numerous cases.)

■ The defendant next maintains that the evidence does not establish the fact that he possessed narcotic drugs since the substances introduced into evidence as People's Exhibits 1, 2 and 3 were not the same substances taken from his person and the apartment. We do not agree with this argument. Upon a careful examination of the record we find that the substances introduced into evidence by the State were the same substances taken from the defendant and from the apartment. The chain of events from the seizure of said substances through their analysis at the crime laboratory to their production at the trial was fully explained and complete. (People v. Harper, 26 Ill2d 85, 185 NE2d 865.) The testimony of the police officers and of the police chemist adequately and fully accounted for the seizure and analysis of the substances.

The defendant raises the point that the indictment fails to charge him with a criminal offense, and therefore his motion in arrest of judgment was erroneously overruled. The indictment charged him with unlawful possession of "a certain narcotic drug, to wit: Cannabis, sometimes called marijuana and heroin." The defendant asks us to

take note of the fact that no substance exists known as "cannabis, sometimes called marijuana and heroin."

■ ■ It is common knowledge that cannabis is called marijuana—it is never called heroin. However, under the facts of this case, the failure to place a comma after the word "marijuana," would not justify a reversal of conviction. The defendant was properly advised of the charges against him prior to trial; unlawful possession of marijuana and heroin. The defendant proceeded to trial being fully aware of the exact nature of the charges against him, and therefore was not prejudiced.

The defendant also contends that the evidence does not establish that the drug identified as cannabis (marijuana) was of the quality and kind defined as "narcotic drugs" in the relevant statute. He argues that the evidence fails to establish that the "cannabis" testified to by the police chemist was not the mature stalks of the plant Cannabis Sativa L., fiber produced from such stalks, oil or cake made from the seeds of such plant, and any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks, all of which are by statute excluded from the "cannabis" defined in the statute as a narcotic drug.

The chemist's testimony was that he found that the substance which he tested was "marijuana, cannabis, commonly referred to as marijuana." Since he gave no further opinion and did not testify that the substance was within the definition of narcotic drugs as set out in the statute, the defendant contends that he was therefore not charged with a criminal offense.

In support of this argument he cites the cases of People v. Sowrd, 370 Ill 140, 18 NE2d 176, and People v. Williams, 4 Ill App2d 506, 124 NE2d 537, where the courts held that failure to charge possession of marijuana of the specific kind and quality defined as narcotic drugs in the 1935 and 1937 Acts relating to narcotic drugs constituted a failure to charge a criminal offense. However, defend-

ant fails to note that the Sowrd case, supra, upon which Williams, supra, relied, was distinguished in the case of People v. Yeargain, 3 Ill2d 25, 119 NE2d 752, where the court was faced with an indictment similar to that present in the instant case. The defendant cited the Sowrd case in support of his argument that said indictment was insufficient. The court noted that the Narcotic Act was amended in 1949 so that the act was then, and is now, different from the 1935 Act.

Subsection 13 of section 1 of the Uniform Narcotic Drug Act, in effect in 1935, upon which the decision in Sowrd was rendered, read as follows:

" 'Cannabis' includes the following substances under whatever names they may be designated: (a) The dried flowering or fruiting tops of the pistillate plant Cannabis Sativa L., from which the resin has not been extracted, (b) the resin extracted from such tops, and (c) every compound, manufacture, salt, derivative, mixture, or preparation of such resin, or of such tops from which the resin has not been extracted." (Ill Rev Stats 1935, c 91, par 157.)

Subsequent to the Sowrd decision this subsection was amended, and in 1951, at the time of the offense and indictment in Yeargain, the subsection read:

" 'Cannabis' includes all parts of the plant Cannabis Sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or resin; but shall not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom) fiber, oil, or cake, or the sterilized seed

of such plant which is incapable of germination."
(Ill Rev Stats 1951, c 38, par 192.1.)

The court in Yeargain, supra, commented upon the amendment of subsection 13 of section 1 of the Act and stated at page 27:

"A comparison of the wording of these two subsections readily discloses the inapplicability of People v. Sowrd to the present statute. Under the 1935 statute 'cannabis' was defined as including the substances (a), (b) and (c), thereby making them an essential part of the drug regulated by the statute. Under the statute in its present form 'cannabis' is defined as including 'all parts of the plant Cannabis Sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture or preparation of such plant, its seeds, or resin;' and then provides it shall not include certain specified parts or derivatives thereof. Comparison of these two definitions shows that under the 1935 statute cannabis of a specific quality and kind was subject to the prohibitions of the act while under the statute as amended in 1949 all cannabis was subject to the act, excluding the specific exceptions."

Under the present Uniform Narcotic Drug Act the definition of cannabis remains the same as that under the 1951 Act. (Ill Rev Stats 1963, c 38, par 22–2.) Therefore, the reliance by the defendant upon the Sowrd case, supra, is without merit.

Section 39 of the Narcotic Act (Ill Rev Stats 1963, c 38 par 22–44) provides that "In any complaint, information, or indictment, and in any action or proceeding brought for the enforcement of any provision of this Act, it shall not be necessary to negative any exception . . . contained in this Act, and the burden of proof of any such

exception . . . shall be upon the defendant." Under this statute the burden is upon the defendant to prove that he came within the exception to narcotic drugs as defined under the Act. In People v. Austin, 22 Ill2d 587, 177 NE2d 97, the Supreme Court rejected an argument similar to that put forth by the defendant in the instant appeal. There the defendant contended that there was no proof that a certain substance was a derivative of opium within the meaning of the statute. Under the relevant statute not all forms of opium are proscribed. Certain salts are derivatives of opium and are legal commodities. The defendant contended that the State had to prove that the derivative he possessed did not come within the exception. The Supreme Court rejected this contention and cited section 39 of the Narcotic Act which specifically placed the burden of proof of such exception upon the defendant.

Similarly in the Yeargain case, supra, the court discussed this point and stated: ". . . it was not necessary that the indictment negative the exceptions contained in the statute defining the regulated drug."

The defendant argues that to require him to establish that the cannabis examined by the police chemist did not fall within the exceptions of the statute would release the State from its burden of proving him guilty beyond a reasonable doubt.

The construction cited above does not do violence to the requirement that the State prove the guilt of the defendant beyond a reasonable doubt. In People v. Williams, 23 Ill2d 549, 179 NE2d 639 (1962), the Illinois Supreme Court stated at page 555:

> "We believe that the statutory provision which states that the burden of proof of the exemption shall be upon the defendant must be applied to this situation in such a way that it does not conflict with the principle that places upon the State the burden of proving

101

the defendant guilty beyond a reasonable doubt. Thus, if there is in the record evidence sufficient to raise a reasonable possibility that the defendant comes within the exemption thus creating a reasonable doubt of his guilt, the defendant has met the burden of proof imposed upon him by the statute. Where, as was the case in People v. Palumbo, 5 Ill2d 409, there is no suggestion in the record that the substance containing narcotics is a medicinal preparation, the State is not required to prove the concentration."

■ In the case at bar there is not the slightest suggestion that the defendant was in possession of anything but proscribed narcotics. The burden having shifted to defendant, and the defendant having failed to meet that burden, he cannot now claim that he was not charged with or proven guilty of a criminal offense under the Uniform Narcotic Drug Act.

■ The last point raised by the defendant is that neither venue nor his age were properly established in the trial court. At the request of the State's Attorney the court took judicial notice of the fact that the defendant was above the age of 17 years. The jury did not find his age, nor did defendant make his age an issue of fact. No reversible error results from this failure to establish his age at the trial. Herder v. People, 209 Ill 50, 70 NE 674; People v. Yurkiates, 404 Ill 157, 88 NE2d 458, and People v. Poole, 284 Ill 39, 119 NE 916.

■ In reference to the failure to establish venue, the defendant argues that the State's evidence did not affirmatively establish that the alleged offense occurred in the county and state alleged in the indictment. The evidence in this case showed the street name and number (6945 South Cornell Avenue), and that the participating policemen were members of the Chicago Police Depart-

ment. The case was tried in the circuit court of Cook County, criminal division. In People v. Pride, 16 Ill2d 82, 156 NE2d 551, it was held that the foregoing was sufficient proof of venue.

For the foregoing reasons the conviction of the defendant is affirmed.

Affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.

ON REHEARING

A rehearing was granted by the court in this case. After a further study and examination of the record and briefs in this case, and the matters set forth on rehearing, we conclude that we can find no reason for departing from our original decision, and we, therefore, adhere to it.