THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JEROME WHITE, Defendant-Appellant.

Fourth District   No. 4—88—0553

Opinion filed March 31, 1989.—Rehearing denied April 21, 1989.

Dennis Doherty, of Chicago, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On August 19, 1982, defendant Jerome White, Bernice Caldwell, and Jerome's brothers Derrick White and Michael Johnson were charged by a multicount indictment in the circuit court of Champaign County with the offenses of murder, felony murder, armed robbery, conspiracy to commit murder, and conspiracy to commit armed robbery in violation of sections 9—1(b)(5), 9—1(a)(3), 18—2, and 8—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1(b)(5), 9—1(a)(3), 18—2, 8—2). Following a jury trial, that court entered judgment on February 15, 1983, on a general verdict finding defendant guilty of murder and conspiracy to commit murder but not guilty of armed robbery. The court subsequently sentenced defendant to a term of natural life imprisonment.

The conviction and sentence were affirmed on direct appeal. (*People v. White* (1984), 122 Ill. App. 3d 24, 460 N.E.2d 802.) On October 11, 1985, the circuit court dismissed a *pro se* petition for postconviction relief filed by defendant as "frivolous and patently without merit." This court reversed that dismissal and remanded with directions to appoint counsel to represent defendant (*People v. White* (1987), 152 Ill. App. 3d 404, 504 N.E.2d 520) and to proceed to the second stage of inquiry in the post-conviction process.

On October 28, 1987, defendant's attorney filed a supplemental post-conviction petition adopting and incorporating the *pro se* petition and alleging in part: (1) defendant was denied due process because the multicount indictment was based in part on the State's knowing use of perjured testimony which it never sought to correct; and (2) defendant's trial attorneys were ineffective for (a) failing to consult with defendant regarding trial preparation; (b) failing to call an exculpatory witness; and (c) failing to explain to defendant his right to testify. Other issues raised in the petition are not raised on this appeal. On July 7, 1988, following a hearing, the circuit court allowed the State's motion to dismiss the amended petition, noting it failed to allege facts sufficient to warrant the relief requested.

On appeal, defendant maintains the amended post-conviction petition was sufficient to require the court to hold an evidentiary hearing to determine whether: (1) the State knowingly used perjured testimony before the grand jury thus depriving him of due process; and (2) defendant was deprived of his sixth amendment right to effective assistance of counsel at trial. We agree with the circuit court that the amended petition and supporting documents failed to set forth facts showing a deprivation of defendant's rights in either respect. Thus, we affirm.

■ We consider first the allegations of the State's knowing use of perjured testimony before the grand jury in obtaining the indictment of defendant. In *Napue v. Illinois* (1959), 360 U.S. 264, 3 L. Ed. 2d 1217, 79 S. Ct. 1173, the United States Supreme Court held that an accused was denied due process in a State criminal proceeding partly because the State knowingly used perjured testimony at *trial*. However, neither that Court nor the Illinois Supreme Court has ever held that due process was violated by the use of perjured testimony before a grand jury. Moreover, the United States Supreme Court has expressed a great reluctance to pass upon the propriety of evidence used to indict. In *Costello v. United States* (1956), 350 U.S. 359, 100 L. Ed. 397, 76 S. Ct. 406, the Court rejected a defendant's claim that his indictment should have been dismissed because the grand jury did not have sufficient competent evidence to indict. The Court said, "[i]f indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed." (*Costello*, 350 U.S. at 363, 100 L. Ed. at 402, 76 S. Ct. at 408.) Similarly, unwillingness to examine the evidence leading to indictments has been expressed by that Court in *Lawn v. United States* (1958), 355 U.S. 339, 2 L. Ed. 2d 321, 78 S. Ct. 311, and *United States v. Calandra* (1974), 414 U.S. 338, 38 L. Ed. 2d 561, 94 S. Ct. 613.

A fairly recent decision of the United States Supreme Court indicates a particular reluctance of that court to examine the evidentiary procedures before a grand jury after an accused has been convicted. In *United States v. Mechanik* (1986), 475 U.S. 66, 89 L. Ed. 2d 50, 106 S. Ct. 938, late in trial in a Federal district court, the defense learned that a rule prohibiting witnesses to be present before the grand jury while others were testifying had been violated in the proceedings where the accused was indicted. The defense raised the issue in its post-trial motion after conviction. The United States Supreme Court ultimately held that any error was cured by the conviction.

No claim of constitutional deprivation was asserted in *Mechanik* and the rule violation was comparatively minor, but the strong language of the opinion is significant. The Court pointed out that the rule violation could have enabled pressure to be put on a witness which would cause the witness to give testimony influencing the grand jury to indict when it would not otherwise have done so "[b]ut the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt." (*Mechanik*, 475 U.S. at 70, 89 L. Ed. 2d at 56, 106 S. Ct. at 942.) The opinion then explained the social costs incurred any time a new trial is ordered and concluded such clearly was not justified there.

On the grounds of knowing presentation of perjured testimony before the indicting grand jury, various Federal Circuit Courts of Appeal have set aside convictions. (See *United States v. Ciambrone* (2d Cir. 1979), 601 F.2d 616; *United States v. Basurto* (9th Cir. 1974), 497 F.2d 781; 2 W. LaFave & J. Israel, Criminal Procedure §15.4, at 307-08 (1984).) In *United States v. Samango* (9th Cir. 1979), 607 F.2d 877, a Federal district court was held to have properly discharged its supervisory powers in its pretrial dismissal of an indictment obtained through the use of known perjury. Other circuit courts of appeal have refused to set aside convictions obtained even though perjury occurred before the grand jury when the evidence before the grand jury (1) was sufficient "to support the indictment" (*United States v. Claiborne* (9th Cir. 1985), 765 F.2d 784, 791), such "that the grand jury may have indicted without giving any weight to the perjured testimony" (*United States v. Udziela* (7th Cir. 1982), 671 F.2d 995, 1001); or (2) contained "*some* competent evidence to sustain the charge" (emphasis in original) (*Coppedge v. United States* (D.C. Cir. 1962), 311 F.2d 128, 132). The *Udziela* opinion contains an excellent discussion of the question of when the use of perjured testimony before the grand jury is cured by other evidence presented.

No substantial ruling by a court of review of this State regarding the effect upon an indictment of perjured testimony has been called to our attention. In *People v. Rivera* (1979), 72 Ill. App. 3d 1027, 1037-38, 390 N.E.2d 1259, 1267, the court stated that when the record showed (1) a dispute as to whether a police officer lied before the grand jury; and (2) two other witnesses, one of whom identified the defendant as the perpetrator of the crime, also testified before the grand jury, the trial court's determination to deny a motion to dismiss the indictment should not be set aside.

In *People v. Rodgers* (1982), 92 Ill. 2d 283, 442 N.E.2d 240, the circuit court, in consolidated cases, had dismissed indictments for lack of supporting evidence. On ultimate appeal, the supreme court concluded the circuit court has "inherent supervisory authority to review grand jury transcripts and determine whether any evidence was presented which tends to connect the accused to the offense charged." (*Rodgers*, 92 Ill. 2d at 290, 442 N.E.2d at 243.) The court made clear that the trial court need not determine if "any evidence was presented as to each element of the offense" but only to ascertain that there be "some evidence relative to the charge." *Rodgers*, 92 Ill. 2d at 290, 442 N.E.2d at 244.

■ In determining whether the amended post-conviction petition and supporting documents here set forth a sufficient showing of a violation of defendant's due process rights by use of perjured testimony, we consider all of the foregoing authorities. We recognize the caution expressed by the United States Supreme Court in permitting the upsetting of a conviction on the basis that a grand jury might have erred in receiving evidence as to probable cause. However, we also recognize the importance, as expressed by the circuit courts of appeal, of upholding the integrity of the judicial process by sanctioning the prosecution for the knowing use of perjury before the grand jury. We need not decide whether the policy of not examining the process of determining probable cause to charge, once guilt has been proved beyond a reasonable doubt, should always prevail. As we shall explain, other evidence before the grand jury here was clearly more than sufficient to meet the "some evidence relative to the charge" standard of *Rodgers* which we deem to be sufficient to cure any alleged knowing use of perjury in obtaining the indictment.

In order to obtain a full understanding of the occurrence giving rise to the charges against defendant, a reading of the opinion of this court in the case on direct appeal from the conviction would be helpful. (*People v. White* (1984), 122 Ill. App. 3d 24, 460 N.E.2d 802.) In explaining the sufficiency of the evidence before the grand jury to cure any alleged perjury before that body, we need only summarize the transcript of the proceedings before the grand jury, a copy of which was attached to the amended post-conviction petition.

The only witness testifying before the grand jury was Detective Michael Robb. He testified concerning the events surrounding two shootings that occurred on August 6, 1982, at a rest stop on Interstate 57. He related the description of the shooters and their car and the facts of the shootings as told to him by a number of people who witnessed the shootings. He further related that two men who appar-

ently matched the description of the shooters, driving a silver, mid-sized car, as described by the witnesses, were subsequently stopped by police and identified as Allen Walker and Doyle Johnson, both of Chicago. Robb then described the physical evidence found by the police near the rest area where the shootings occurred and along Interstate 57. That evidence included a sawed-off .410 shotgun and a .357 magnum revolver.

Robb then testified that his investigation of the deaths revealed four additional names of persons involved in the shootings: Jerome White, Derrick White, Bernice Caldwell, and Michael (White) Johnson. Robb said those names were given to him by the shooters. He said that Doyle Johnson (Doyle) indicated he and Walker had been picked up in Chicago and driven to Champaign by Caldwell and Michael Johnson. He said Doyle related how they were taken into a bedroom at Caldwell's house in Champaign and were given two firearms, a .357 magnum revolver and a sawed-off shotgun, and they were given a silver mid-sized Chevrolet car. He said Doyle indicated it was explained to them that they were to go to the rest area to do "a job," and that Doyle thought the job was "simply" an armed robbery at that time. Robb testified that Walker agreed they had been picked up in Chicago and driven to Champaign, but stated that defendant rather than Michael Johnson accompanied Caldwell during this time. According to Robb, Walker did not mention anything about their being given firearms and being told what they were to do but merely stated he and Doyle stayed in Champaign for a few days and returned to Chicago.

The grand jury could have believed a reasonable likelihood existed that Doyle was truthful and accurate in all else he allegedly told Robb, but he was untruthful or inarticulate in stating that Michael Johnson accompanied Caldwell. The grand jury could also have deemed it likely that Walker correctly identified defendant as the person accompanying Caldwell but was unwilling to further incriminate himself in his statement. Thus, there was some evidence defendant aided in bringing Doyle and Walker to Champaign, in supplying them with weapons and directing them to perform "a job." One of the charges against White was felony murder based on a robbery. The trial jury returned a general verdict of guilty of murder. The hearsay evidence of Doyle and Walker's statement contained evidence of every element of the guilt of defendant by accountability for a felony murder based on robbery.

Robb also testified that a witness, who was not named for safety purposes and who worked as an errand boy for Derrick White, told

Robb he witnessed a meeting between Derrick, Caldwell, and defendant in Derrick's hospital room on the day after the shootings. He said the witness brought two prostitutes to the hospital room, and Derrick told them that "the shooters knew exactly what they were doing" and that the women were in no danger. He said Derrick also told the women not to discuss the incident. Robb said that the witness also related that he had seen Michael Johnson with a .357 magnum revolver several weeks before the shootings and had given him an empty cartridge from the gun. Robb testified that laboratory analysis indicated the cartridge was from one of the murder weapons.

The latter testimony tended to generally corroborate defendant's guilt of murder and conspiracy to commit murder. Moreover, a statement by defendant that the shooters were aware of what they were doing could be taken by the grand jury as an indication that when, according to Doyle, they were told to do "a job," they were being told to kill the victim. Thus, the hearsay evidence presented to the grand jury contained at least some evidence of defendant's guilt, by accountability of murder other than felony murder and of conspiracy to commit murder.

The contention that evidence known to be perjurious was presented arises from the testimony of Robb that another unnamed person was present at the Caldwell house on the night before the shootings and witnessed Walker and Doyle being given two firearms, instructed to drive to the rest area, supplied with a description of the deceased and his vehicle, and told to go to the rest area and to kill him or anyone else with him. Robb testified the witness was standing in the room when this conversation took place. The amended post-conviction petition alleged that on the day of the indictment, law enforcement officers had learned that the foregoing was not true and Robb was aware of this.

The circuit court concluded that the allegations of perjury were sufficient to raise a factual question in that regard but, in any event, the record showed that the evidence of defendant's guilt was sufficient to cure the perjury. We agree that any perjury was cured and need not consider the sufficiency of the allegation of perjury.

We next address defendant's contention that he should have been afforded a hearing on his allegations of ineffective assistance of counsel.

Defendant argues his trial attorneys failed to adequately investigate and prepare his defense, as shown by their failure (1) to secure the favorable testimony of defendant's coindictee, Bernice Caldwell; (2) to explicitly advise defendant of his right to testify in his own be-

half; and (3) to discuss defense strategies with him. Defendant further alleged that one of his trial attorneys was ineffective because his breath "smelled strongly of alcohol" during the trial.

■ To establish the ineffectiveness of trial counsel, the defendant must show (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that counsel's shortcomings were so serious as to deprive the defendant of a fair trial. (*Strickland v. Washington* (1984), 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064.) A defendant must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) The inquiry into counsel's performance must be whether counsel's assistance was reasonable considering all the circumstances. (*Strickland*, 466 U.S. at 688, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.) The Illinois Supreme Court adopted the standards of *Strickland* in *People v. Albanese* (1984), 104 Ill. 2d 504, 526, 473 N.E.2d 1246, 1255, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061, and, here, the trial court judged defendant's allegations based on that standard.

The first allegation of incompetence is that his attorneys failed to prepare for trial, as shown by their failure to confer with defendant before trial and their consequent ignorance of the availability of Bernice Caldwell's favorable testimony. That allegation was supported by a copy of defendant's visitor record from the Champaign County Correctional Center showing visits from defendant's trial attorneys on September 24, 1982, for 15 minutes and on February 6, 1983, for 30 minutes, and an affidavit from Bernice Caldwell outlining the testimony she would have given if she had been called as a witness for defendant.

In that affidavit, she stated that (1) on August 5, 1982, she and defendant drove to Chicago, and while there, defendant talked with Walker and Doyle; (2) defendant offered them a ride to Peoria; (3) en route to Champaign, Doyle asked defendant if he still operated his prostitution business from a rest stop on I-57; (4) defendant told Doyle he was in the process of relocating, because Bernice had been beaten while working there; (5) when they arrived in Champaign, Bernice suggested the four of them continue their drive to Peoria the following morning; (6) Doyle and Walker ate dinner with Bernice and defendant, and afterwards, she showed them where they were to sleep; and (7) upon awakening the following morning, she and defendant discovered Walker and Doyle were gone and that they had taken some guns from the house and a rental car.

In considering the question of counsel's failure to call Caldwell as a witness, the trial court adopted the opinion it had expressed in dismissing defendant's original petition, that Caldwell chose not to testify at her own trial, and it was unlikely she would have testified at defendant's trial. However, apparently the court was mistaken and Caldwell did testify at her own trial.

Defendant has included, in this post-conviction proceeding, the record of Caldwell's testimony at her own trial on these charges to illustrate the testimony she would have provided at his trial. The State has filed a motion to strike Caldwell's record on the basis that a court should not take judicial notice of the contents of records except in the proceeding pending before it. (*People v. Washington* (1966), 81 Ill. App. 2d 90, 225 N.E.2d 472, *aff'd* (1968), 41 Ill. 2d 16, 241 N.E.2d 425.) In *People v. Honn* (1977), 47 Ill. App. 3d 378, 362 N.E.2d 90, this court said, where a foundation is laid and they were otherwise properly offered into evidence, such records would be admissible. No such foundation was laid here, however, and, accordingly, we grant the State's motion to strike references to the contents of the record of Bernice Caldwell's trial.

Moreover, while the failure to interview witnesses may indicate actual incompetence, particularly where the testimony is known to trial counsel and may be exonerating (*People v. Greer* (1980), 79 Ill. 2d 103, 123, 402 N.E.2d 203, 212), the testimony here, as shown by Caldwell's affidavit, would not have exonerated defendant. Caldwell's affidavit supported Doyle's statements that she and defendant had driven Doyle and Walker to Champaign, that there was friction between defendant and decedent regarding prostitution at the rest stop and that Doyle and Walker had gotten the guns and rental car used in the commission of the shootings from defendant and Caldwell. In addition, the discovery materials which would have been available to defendant's attorneys showed Bernice Caldwell had information relating to defendant's activities on the night before the shootings, even if defendant did not advise them of that fact. Any error in the trial court's conclusion that Caldwell would have been unable or unwilling to provide testimony which would exonerate defendant is harmless.

Defendant's next criticism of trial counsel is his alleged failure to advise defendant of his right to testify. The trial court found, in its original memorandum opinion, that in the absence of an accompanying assertion that the petitioner was actually unaware of his right to testify, the allegation was insufficient. The trial court noted the supplemental petition also omitted such an allegation, and fur-

ther, omitted any allegation that his counsel would not allow defendant to testify. The trial court found that, applying the *Strickland* test, even if defendant met the first prong of the test, *i.e.*, that counsel's failure to inform him of the right to testify fell below an objective standard of reasonableness, he failed to show that the result of the trial would probably have been different had counsel fully advised him of his right. We conclude the trial court properly found no error in counsel's failure to inform defendant of his right to testify.

■ Defendant's next claim of ineffectiveness is based on counsel's failure to discuss trial strategies with defendant. Although an accused represented by counsel retains a right to make decisions involving "fundamental rights," a review of counsel's competency does not extend to those areas involving trial tactics or strategy, which are purely matters of professional judgment. *People v. Haywood* (1980), 82 Ill. 2d 540, 543-44, 413 N.E.2d 410, 412; *People v. Reese* (1984), 121 Ill. App. 3d 977, 460 N.E.2d 446.

■ Finally, defendant claims one of his trial attorneys was incompetent, because his breath smelled strongly of alcohol during the trial. Again, applying the *Strickland* test, even if defendant had shown that his counsel's use of alcohol during trial fell below an objective standard of reasonableness, he did not show how this shortcoming created a reasonable probability that the result of the trial would have been different had it not been for counsel's behavior.

Accordingly, we hold that the circuit court correctly dismissed the amended post-conviction petition without an evidentiary hearing. We affirm.

Affirmed.

McCULLOUGH, P.J., and LUND, J., concur.