**Jerome WHITE, Petitioner–Appellant,**

v.

**Salvador A. GODINEZ, Respondent–Appellee.**

No. 96–3187.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 23, 1998.

Decided April 28, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied June 22, 1998.

Brigitte Nuss (argued), Chapman & Cutler, Chicago, IL, for Petitioner–Appellant.

Catherine Glenn (argued), Office of the Attorney General, Criminal Appeals Division, Chicago, IL, for Respondent–Appellee.

Before CUMMINGS, WOOD, Jr. and RIPPLE, Circuit Judges.

CUMMINGS, Circuit Judge.

This appeal from the district court's denial of a writ of habeas corpus springs ultimately from a murder that took place on August 6, 1982. On that date, Al Walker and Doyle Johnson robbed and shot Waymond Jackson and Donald Stewart at a rest area on Interstate 57 near Pesotum, Illinois. Although Stewart survived the shooting, Jackson died of his wounds, turning the crime into murder. Some two weeks later, the petitioner in this case, Jerome White, was charged with murder and conspiracy to commit murder for having hired Walker and Johnson to kill Jackson. (White was also charged with armed robbery and conspiracy to commit armed robbery, but those charges are not involved in this appeal.)

At trial, Johnson was the principal witness against White. Johnson had already pled guilty to murder and received a thirty-year prison sentence. At White's trial, Johnson testified that he and Walker had met White and his girlfriend, Bernice Caldwell, in Chicago on the day before the shooting, and that White had told him he could make some money by helping White with a conflict between Caldwell and a man in Champaign (Jackson, as it turned out). During the drive from Chicago to Champaign, White allegedly told Johnson and Walker that he wanted the man he had mentioned taken "out of the game" and offered them $1,000 each to do the job. Jackson, apparently, was a pimp with whom Caldwell and White had quarreled over control of the prostitution business at the Pesotum rest area on Interstate 57.

Johnson's testimony continued: When they arrived at Bernice Caldwell's house in Champaign, White, Caldwell, Walker, and Johnson went to a bedroom where Johnson and Walker were given two guns by White, who told them to take a rental car parked in the garage. The two then drove to the rest area and shot Jackson and Stewart. Johnson and Walker were apprehended soon after as they drove the rental car toward Chicago. At first, Johnson maintained that White's brother, Michael, rather than Jerome White himself, had hired the pair to kill Jackson. Five days prior to Jerome White's trial, however, Johnson changed his story and claimed that he had lied before in order to protect Jerome White in the hope that White would get Johnson a good lawyer.

Jerome White's trial attorney pursued a defense based on the theory that Johnson's first confession, in which he implicated Michael White rather than Jerome, was a true account of the crime. Jerome White, however, was convicted of murder and conspiracy to commit murder, and the court sentenced him to life in prison. On direct appeal, White challenged several of the trial court's evidentiary rulings, the sufficiency of the evidence against him, the selection of a "death-qualified" jury, and the imposition of a life sentence. The Illinois Appellate Court af-

firmed, *People v. White*, 122 Ill.App.3d 24, 77 Ill.Dec. 498, 460 N.E.2d 802 (1984), and White did not seek leave to appeal to the Illinois Supreme Court.

Next White filed a *pro se* petition for postconviction relief. In the petition, he argued that the State had knowingly used perjured testimony before the grand jury; that trial counsel had provided ineffective assistance at trial by failing to move for a dismissal of the indictment; that trial counsel had provided ineffective assistance by failing to meet with White for more than twenty minutes prior to trial and by failing to consult with him regarding trial strategy, potential witnesses, and White's right to testify on his own behalf; and that appellate counsel had provided ineffective assistance by refusing to pursue on direct appeal the claims regarding the grand jury's indictment. The circuit court summarily dismissed the petition as frivolous, but the appellate court reversed and remanded. *People v. White*, 152 Ill. App.3d 404, 105 Ill.Dec. 420, 504 N.E.2d 520 (1987).

On remand, represented by counsel, White raised three additional issues: the State's failure to disclose exculpatory evidence; the systematic exclusion of blacks from the grand and petit juries; and ineffective assistance of trial counsel based on counsel's alleged abuse of alcohol throughout trial. The circuit court dismissed the petition on its merits without holding an evidentiary hearing. White appealed the dismissal with regard to the grand jury claim and the claims of ineffective assistance of counsel based on failure to consult, failure to call Bernice Caldwell as a witness, use of alcohol, and failure to advise him of his right to testify. The appellate court affirmed the dismissal. *People v. White*, 180 Ill.App.3d 781, 129 Ill.Dec. 641, 536 N.E.2d 481 (1989).

White filed a petition for leave to appeal to the Illinois Supreme Court, challenging the appellate court's rulings as to the grand jury claim, the ineffective assistance of counsel claim based on failure to consult, and an ineffective assistance claim based on the failure to object to the alleged exclusion of black jurors. The Illinois Supreme Court denied leave to appeal. *People v. White*, 127 Ill.2d 638, 136 Ill.Dec. 604, 545 N.E.2d 128 (1989).

In early 1994, White filed a petition for a writ of habeas corpus in the federal district court for the Northern District of Illinois. That court transferred the petition to the Central District of Illinois, which court construed the petition to raise five claims: 1) the grand jury indictment violated due process because it was based upon perjured testimony; 2) trial counsel provided ineffective assistance by failing to challenge the grand jury perjury, failing to consult with defendant prior to trial, appearing at trial smelling of alcohol, failing to call Bernice Caldwell to testify, and failing to explain to White his constitutional right to testify in his own defense; 3) denial of the right to testify; 4) inadequacy of the State's fact-finding procedures and unfairness of the waiver doctrine asserted by the State; and 5) withholding of information by the State concerning the perjured grand jury testimony. White later amended the petition to include a challenge to the disproportionate severity of his life sentence compared to the forty-year sentence of Bernice Caldwell.

The district court denied White's petition on July 31, 1996 without holding an evidentiary hearing. The court held that trial counsel's alleged failure to consult and his failure to call Bernice Caldwell [1] did not deny White his right to effective assistance of counsel, and that White's claim of perjury did not undermine the indictment. The court found that all of the other arguments raised in the petition had been procedurally defaulted because White did not include them in his petition for leave to appeal to the Illinois Supreme Court during the post-conviction phase of his case.

White asked the district court for a certificate of probable cause to appeal; the court construed the request as being for a certifi-

---

1. It is unclear why the district court did not find the claim regarding trial counsel's failure to call Bernice Caldwell as a witness to be procedurally defaulted, given its view that failure to include an issue in the petition for leave to appeal constituted a procedural default. In any event, this Court's reversal on the procedural default question means that White was entitled to an adjudication on the merits, and so we will review the district court's substantive resolution of the issue in Part III below.

cate of appealability (the newer terminology of the habeas statute, see 28 U.S.C. § 2253(c)), and then denied the request. This Court, however, granted White a certificate of appealability on March 10, 1997 with respect to the ineffective assistance of counsel claims and the district court's application of procedural default principles. For the reasons given below, this Court holds that it was error to find White's claims procedurally defaulted for failure to include them in his petition for leave to appeal to the Illinois Supreme Court. We further hold that the district court erred in dismissing White's other ineffective assistance of counsel claims without a determination as to the duration and substance of the consultation between White and his counsel prior to trial. We therefore vacate the district court's order and remand for consideration of the erroneously defaulted claims and the taking of evidence concerning trial counsel's allegedly ineffective performance.

## I. STANDARD OF REVIEW

 White filed his petition for habeas corpus on February 2, 1994, which was before the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA). This Court therefore applies the version of the habeas statute that was in effect prior to the AEDPA. See *Lindh v. Murphy,* — U.S. —, 117 S.Ct. 2059, 138 L.Ed.2d 481. Under that earlier version of the statute, we review conclusions of law reached by the district court and the state courts *de novo,* but apply a deferential standard to the state courts' findings of fact, viewing them as "presumptively correct." *Lieberman v. Washington,* 128 F.3d 1085, 1091 (7th Cir.1997).

## II. PROCEDURAL DEFAULT

 The district court denied White habeas relief on his ineffective assistance claims concerning trial counsel's use of alcohol and failure to advise White of his right to testify on the ground that White had not included these issues in his petition for leave to appeal (PLA) to the Illinois Supreme Court during the post-conviction phase of the case.[2] This Court's recent decision in *Boerckel v. O'Sullivan,* 135 F.3d 1194 (7th Cir.1998), reaffirmed and elaborated upon the holding of *Gomez v. Acevedo,* 106 F.3d 192 (7th Cir.1997), vacated on other grounds, — U.S. —, 118 S.Ct. 37, 139 L.Ed.2d 6, that the failure to include a claim in the discretionary PLA to the Illinois Supreme Court does not constitute a default of that claim. Although *Boerckel* addressed the question with an eye toward whether the failure to include a claim in the PLA constituted a failure to exhaust available state remedies, the opinion correctly noted that in this context the result is identical under either exhaustion principles or procedural default doctrine. See *Boerckel,* 135 F.3d at 1199. *Gomez,* moreover, concluded that a habeas petitioner's failure to raise a claim in a PLA to the Illinois Supreme Court on direct appeal did not give rise to a procedural default of that claim. *Gomez,* 106 F.3d at 196. If the failure on direct appeal does not have that effect, then certainly a similar failure at the post-conviction stage cannot. In light of these decisions, the district court erred in holding White's ineffective assistance claims that were raised on postconviction appeal before the Illinois Appellate Court but not included in the PLA to the Illinois Supreme Court procedurally defaulted. On remand, therefore, the district court must evaluate those claims on their merits.

**2.** White also argues that the district court erroneously found his disparate sentencing claim to be procedurally defaulted, but he declines to argue the merits of the issue in light of recent decisions by the Supreme Court and this Court. Given this stance, we will not address the district court's procedural default ruling on this issue. We note, however, that the posture of this claim is different from that of the claims we do address: the disparate sentencing argument apparently was raised in the Illinois Appellate Court on direct appeal but was not advanced at all during the postconviction challenge. For the sake of thor-

oughness, we note that White has not argued on appeal that the district court erred in dismissing on procedural default grounds his claims of denial of the right to testify in his own defense (which the lower court thought was subsumed within the ineffective assistance of counsel claim), the inadequacy of the State's fact-finding procedures and unfairness of the waiver doctrine, or the withholding of information concerning the allegedly perjured grand jury testimony. These issues are therefore waived, and this Court will not consider them.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

The district court considered and rejected the merits of White's claims of ineffective assistance of counsel based on trial counsel's failure to call Bernice Caldwell to testify and failure to consult with White for any significant length of time prior to trial. The court's evaluation of the claims was brief, consisting mainly of the observations that "the Seventh Circuit has never upheld an ineffective assistance claim based on a trial attorney's failure to call certain witnesses" and that "[a] federal habeas court cannot say that Mr. White's trial counsel had to meet with Mr. White for any certain duration of time" (July 31, 1996 Order at 4). The court also noted that, whereas White claimed that counsel met with him for no more than twenty minutes before trial, the Illinois Appellate Court found that counsel met with White for forty-five minutes (*Id.*).

■ The framework for evaluating claims of ineffective assistance of counsel is well established. The criminal defendant seeking to prevail on such a claim must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674. More particularly, the first inquiry requires a court to "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. at 2065–66. Then, assuming that counsel's performance is found to have been deficient, the court must inquire whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

### A. Competence

■ Merely stating the approach indicates that the district court on remand will have to reconsider its conclusions regarding these two claims of ineffective assistance. The court is required to evaluate such claims in light of "all the circumstances," and our decision makes relevant a set of circumstances that the district court did not fully consider the first time around: the claims that were improperly procedurally defaulted. Instead of viewing the alleged failure to consult and the failure to call Bernice Caldwell in isolation, the court must view them on remand in light of the additional claims regarding alcohol abuse and failure to advise White concerning his right to testify in his own defense.

■ The district court's resolution of the failure to consult claim was inadequate for another reason as well. The court, as noted, refused to "say that Mr. White's trial counsel had to meet with Mr. White for any certain duration of time." Although this stance is certainly correct in the abstract, it would not be correct to say that brief, desultory consultation can never amount to constitutionally ineffective assistance. In one case, a lawyer might consult only briefly with her client, yet spend significant additional time reviewing records and interviewing other potential witnesses. Such representation, without other evidence of ineffectiveness, would very likely be sufficient under the standard announced in *Strickland*. Yet if the same lawyer in another case put little or no further effort into the defense beyond her cursory consultation with the client (and that course of action prejudiced the defense), the representation might very well be inadequate.

White makes out a plausible case that his own situation is more akin to the latter example than to the former. First, it is true that the Illinois Appellate Court found that White's trial attorney met with him for a total of forty-five minutes prior to trial. See *People v. White*, 180 Ill.App.3d 781, 129 Ill. Dec. 641, 646, 536 N.E.2d 481, 486 (1989). Federal courts engaged in habeas corpus review presume that state court factual findings are correct. See 28 U.S.C. § 2254(d); *Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722; *Mills v. Jordan*, 979 F.2d 1273, 1279 (7th Cir.1992). That presumption, however, does not mean that such factual findings are impervious to question. The Illinois Appellate Court arrived at the forty-five minute figure by examining prison visitor records to determine the interval between the time White's attorney signed in as a visitor and the time he signed out again. One visit showed a thirty minute

lapse, and another revealed a period of fifteen minutes. White quite sensibly points out that the time between signing in and signing out is most likely greater than the time counsel actually spent in consultation with White, given that some time undoubtedly elapsed between the time counsel signed in and the moment he and his client were actually in a room together. The difference may be small, and this Court has no way of knowing at this time whether the forty-five minute estimate is off by a little or by a lot. That question is one (as we shall see, one of several) that could have been resolved had the district court given White the opportunity, via an evidentiary hearing or otherwise, to supplement the record concerning exactly what consultation actually took place.

██ Whether the actual amount of time White and his lawyer spent together preparing for the case was closer to forty-five minutes or twenty, the brevity of the period raises questions about its adequacy. This was, after all, a case involving charges of murder, armed robbery, and conspiracy. While it did not have the most complex set of facts one could imagine, neither was it the simplest case on the books. Even if the consultation amounted to only twenty minutes it is not, as White argues, ineffective assistance of counsel *per se*. But it is sufficient to lead a reviewing court to inquire further.

In this regard, White does not rest upon the claim that his counsel's very brief consultation was, without more, ineffective assistance. Rather, he points to several concrete results that followed from the cursory consultation. First, he argues that counsel's failure to call Bernice Caldwell as a witness must have been based on a poor understanding of the case caused by the inadequate consultation. Second, one of the claims that the district court incorrectly found to be procedurally defaulted is also arguably a result of the lack of sufficient consultation: counsel's failure to advise White of his constitutional right to testify in his own defense or to appreciate himself the possible value that such testimony might provide to the defense.

Viewed in this manner, the claimed failure to consult bears resemblance to a failure to investigate, which can undoubtedly be enough in some instances to constitute ineffective assistance of counsel. See, *e.g., Hall v. Washington,* 106 F.3d 742, 752–753 (7th Cir.1997); *Kubat v. Thieret,* 867 F.2d 351, 370 (7th Cir.1989), certiorari denied, 493 U.S. 874, 110 S.Ct. 206, 107 L.Ed.2d 159. If counsel's failure to consult adequately with his client led to his failure to comprehend the evidence in the case, then the further missteps White alleges are almost necessarily not attributable to sound strategic decisions. Moreover, another of the claims improperly found to have been procedurally defaulted— that counsel was abusing alcohol during the trial—may be intertwined as well, in that it might have contributed to the failure to make time to consult, the failure to advise White of his right to testify, and the misunderstanding of Caldwell's and White's potential testimony.

██ In any event, this Court does not hold today that White's trial counsel was constitutionally ineffective. We hold merely that the district court erred in rejecting the claim out of hand, without inquiring further into exactly what preparation counsel conducted and for how long. The state courts resolved the ineffective assistance claims on prejudice grounds and so did not conduct evidentiary hearings into the length and substance of the consultations. This Court has held that "a federal evidentiary hearing is required if a habeas petitioner alleges facts which, if proved, would entitle him to relief and the state courts—for reasons beyond the control of the petitioner—never considered the claim in a full and fair hearing." *Porter v. Gramley,* 112 F.3d 1308, 1317 (7th Cir. 1997). A district court may, however, devise a course of action short of a full-blown hearing if such a course will be adequate to discover the necessary facts. See *Wright v. Gramley,* 125 F.3d 1038, 1044 (7th Cir.1997).

The government makes much of the fact that White did not submit an affidavit from his trial attorney in support of his petition for habeas relief. The record does not indicate whether that absence was due to White's lack of diligence, to trial counsel's unwillingness to give an affidavit, or to some other cause. On remand, the district court will be able to use appropriate measures to secure the affidavit or testimony of trial

counsel in order to determine whether his representation was ineffective.

At the risk of being repetitive, the district court on remand must not view each claim of ineffective assistance in isolation, but rather must examine trial counsel's performance as a whole to determine whether it fell below the measure of constitutional effectiveness. See *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2065–66 (requiring court to examine whether counsel was ineffective "under all the circumstances"). Thus the court must consider the failure to consult claim along with the other claims—of alcohol abuse during trial, of the failure to advise White of his right to testify, and of the failure to call Bernice Caldwell as a witness. The central question on remand will be whether all of these alleged errors together add up to ineffective assistance.

### B. Prejudice

■ All of the foregoing discussion would be unnecessary if White could not show that he was prejudiced by the alleged ineffective assistance of counsel. See *id.* at 687, 104 S.Ct. at 2064. If there is not a "reasonable probability" that the outcome of the trial would have been different absent counsel's substandard performance, White could not prevail on his habeas claims. See *id.* at 694, 104 S.Ct. at 2068. But White has made a showing of prejudice that is sufficient, assuming for the moment that his counsel's performance was in fact below the standard of effectiveness, to sustain his claim and require a new trial.

At trial, White's attorney sought to convince the jury that White's brother, Michael, had hired Johnson and Walker to kill Jackson. The strategy was not without basis, because Johnson's initial statements to the police implicated Michael White rather than Jerome. But the gambit was severely undermined by the testimony of Bernice Caldwell's daughter, Theresa. Defense counsel's theory of the case depended heavily on the idea that only four adults were present in Caldwell's house on the night of the shooting: Caldwell, Johnson, Walker, and Michael White. Theresa testified, however, that she saw only Caldwell, Jerome White, and two other men in the house that night. This testimony, coming as it did from a witness who was presumably without motive to lie, was devastating to the trial strategy.

According to Caldwell's affidavit and the actual testimony of both Caldwell and Jerome White at Caldwell's trial, they were in fact at Caldwell's house with Johnson and Walker on the night of the murder. But Caldwell and White claim that they went to bed shortly after arriving at the house in Champaign, then awoke the next morning to find the guns and the rental car gone. Thus their proffered testimony presents a theory of the case that would exonerate them without contradicting the testimony of the child, Theresa.

The jury might well have chosen not to believe this alternative story, just as it apparently disbelieved the defense based on the claim that Michael White ordered the murder. But there is at least a reasonable probability that the jury would have seen matters differently if Caldwell, White, or both of them had testified to their version of events. Instead of being given a choice between two statements by the killer himself, only one of which was consistent with Theresa Caldwell's testimony, the jury would have been given a choice between Johnson's story and a second, equally plausible story told by Caldwell and White. Theresa Caldwell's testimony no longer would have been fatal to the defense, because it would have been entirely consistent with the theory that Johnson and Walker stole the guns and the car after Caldwell and White went to bed.

If on remand the district court determines that trial counsel's performance was deficient, the showing of prejudice is sufficient to require that the petition for a writ of habeas corpus be granted. This Court vacates the order of the district court denying White's petition and remands the case so that the district court may gather evidence concerning the length and substance of trial counsel's consultation with his client, then consider that consultation along with the other claims of ineffective assistance of counsel.

VACATED AND REMANDED.